UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY REGINALD FRANKLIN                    CIVIL ACTION

VERSUS                                    NO: 12-1940

CITY OF SLIDELL, ET AL.                   SECTION: "J"(1)

## ORDER AND REASONS

Before the Court are a 12(b)(6) Motion to Dismiss for Failure to State a Claim filed by Defendant, Dr. James Klein ("Dr. Klein") (Rec. Doc. 22) and Plaintiff's opposition (Rec. Doc. 27). Dr. Klein's motion was set for hearing on the briefs on November 21, 2012. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Dr. Klein's Motion to Dismiss (Rec. Doc. 22) should be GRANTED, for reasons explained more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

On July 26, 2012, Plaintiff, Troy Franklin, filed the instant *pro se* employment discrimination lawsuit. (Compl., Rec. Doc. 1) Plaintiff attempts to assert claims under the Americans With Disabilities Act ("ADA") for disability discrimination,

disclosure of confidential medical information, and being required to take a fit for duty examination before returning to work from medical leave; a claim under Title VII for retaliation; a claim under Section 1981 for racial discrimination; and claims under Louisiana law. Plaintiff seeks the following, nonexclusive items of damages: (1) back-pay with benefits, front pay with benefits, or retirement if front pay is not a viable option, (2) general damages for loss of reputation, inconvenience, and the abuse he allegedly received, (3) punitive damages, (4) costs, and (5) all other equitable relief the Court deems proper. (Compl., Rec. Doc. 1, p. 3)

Plaintiff alleges that he was formerly employed by the City of Slidell, as a senior corrections officer in the Slidell Police Department. In September of 2010, the Slidell Chief of Police, Randy Smith, allegedly relieved Plaintiff of all duties with the Slidell Police Department after Dr. Klein performed a psychological evaluation on Plaintiff and found that he was not fit for duty as a law enforcement officer. Plaintiff subsequently filed suit against the City of Slidell ("the City"), Dr. Klein, and six City employees, including: (1) Chief Randy Smith ("Chief Smith"), of the Slidell Police Department, (2) Captain Kevin Foltz ("Captain Foltz"), of the Slidell Police Department, (3) Captain Robert Jacobs ("Captain Jacobs"), of the Slidell Police Department, (4) Lieutenant Rockwell McLellan ("Lieutenant

McLellan"), of the Slidell Police Department, (5) D. Rene Johnson ("Johnson"), the Slidell Civil Service Personnel Director, and (6) Tim Mathison ("Mathison"), the City's Chief Administrative Officer (collectively "employee Defendants").

In his Complaint, Plaintiff makes the following allegations.[1] On September 5, 2008, he received a death threat from Captain Robert Jacobs. (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1) After receiving the death threat, he filed a complaint with the Slidell Police Department's Internal Affairs division and was referred to the employee assistance program. (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1) An unidentified individual at the employee assistance program informed Plaintiff that he might be suffering from "Post Traumatic Syndrome." (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1) Thereafter, Plaintiff completed a "first report of injury"[2] and was referred to Dr. Harold Ginzburg for a psychiatric evaluation. (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1) Dr. Ginzburg found that he was fit for duty but needed counseling. Dr. Ginzburg recommended that

---

[1] Because Plaintiff is proceeding *pro se*, the Court has construed his opposition to Dr. Klein's motion as a motion to amend his Complaint, which the Court grants. Thus, the summary of Plaintiff's Complaint includes both the allegations that Plaintiff makes in his Complaint and his opposition to Dr. Klein's motion.

[2] By "first report of injury," Plaintiff appears to be referring to a workers' compensation claim that he filed several months after an incident in which his former supervisor, Captain Robert Jacobs, threatened his life.

Plaintiff and Captain Jacobs be separated. (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1) Captain Jacobs and Plaintiff were never separated. Thereafter, Plaintiff reports that he received numerous unexpected visits from Captain Jacobs and that he went out on sick leave "with the understanding of Chief Freddy Drennan." (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1) Plaintiff kept Freddy Drennan, then the Slidell Chief of Police, informed of his progress in counseling, and in June 2010, he negotiated with Chief Drennan to return to work from sick leave. (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1)

On June 25, 2010, Freddy Drennan signed an authorization permitting Plaintiff to return to work on administrative duties. (Compl., Rec. Doc. 1, p. 2, ¶ 1) In the middle of June 2010, Lieutenant McLellan and Captain Foltz met with Chief Smith, then the Chief-elect set to succeed Freddy Drennan, and disclosed medical information to Chief Smith to lead him to believe that Plaintiff was not fit for duty. (Compl., Rec. Doc. 1, p. 2, ¶ 2) Thereafter, Chief Smith met with Dr. Klein, and Dr. Klein submitted a proposal to be paid for a psychological evaluation. (Compl., Rec. Doc. 1, p. 2, ¶ 3) On July 1, 2010, his first day of office, Chief Smith wrote a letter to Plaintiff requiring Plaintiff submit to a fitness for duty evaluation. Plaintiff alleges that Chief Smith did not provide a valid reason, and was,

therefore, in violation of the ADA guidelines. (Compl., Rec. Doc. 1, p. 2, ¶ 5) Plaintiff asserts that in a letter dated August 20, 2010, Dr. Klein "found the Plaintiff to be unfit for duty base [sic] on bad information and standards not applied by the Americans with Disabilities Act, no evidence of direct threat was provided." (Compl., Rec. Doc. 1, p. 2, ¶ 8) Plaintiff further asserts that in a letter dated September 2, 2010, Chief Smith relieved him of all duties and responsibilities with the Slidell Police Department and on September 14, 2010, announced in a staff meeting that Plaintiff no longer worked at the Slidell Police Department. (Compl., Rec. Doc. 1, p. 3, ¶ 9)

Plaintiff alleges that his employer, the City of Slidell, the six City employees named as Defendants, and Dr. Klein all intentionally took actions to violate his rights in order to retaliate against him for filing a discrimination complaint, a civil lawsuit, and "for personal gain." (Compl., Rec. Doc. 1, p. 1) Plaintiff further alleges that Dr. Klein acted on the City's behalf and in its interest, as its agent, in performing the fitness for duty evaluation. He asserts that Dr. Klein became an active participant in the alleged discrimination and retaliation upon receiving the information contained in the exhibits that Dr. Klein attached to his motion to dismiss.[3] (Pl.'s Opp. to Dr.

---

[3] The documents attached to Dr. Klein's motion to which Plaintiff refers include: (1) a two-page typed document authored by Rene Johnson, the Slidell Civil Service Personnel Director, entitled "Incidents leading up to SCO

Klein's Mot. to Dismiss, Rec. Doc. 27, p. 2) Plaintiff contends that Dr. Klein should have refused to perform the fitness for duty evaluation, because it was obvious in light of the materials attached to Dr. Klein's motion to dismiss that the test was "politically, racial [sic], retaliatory motivated." (Pl.'s Opp. to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 2) Plaintiff also alleges that Dr. Klein was interested in providing "off the books" psychiatric services to the City of Slidell.[4] (Pl.'s Opp.

---

Franklin's Leave of Absence," which recounts a series of events involving Plaintiff and his employer that occurred between July of 2007 and April 4, 2010 (Rec. Doc. 22-2, p. 1-2); (2) a job description for a senior corrections peace officer with the Slidell Police Department (Rec. Doc. 11-1, p. 3-5); (3) a letter dated September 21, 2009 from Dr. Larry Warner, M.D., in which Dr. Warner stated that since July 20, 2009, he had been treating Plaintiff for Adjustment Disorder, mixed type, with depression and anxiety, along with acute stress disorder, as a direct result of Plaintiff's job-related stress, and he opined that Plaintiff should remain away from work for an undetermined time while undergoing treatment (Rec. Doc. 22-2, p. 7); (4) a return to work approval form signed by Dr. Broderick Pinkney, M.D. on July 24, 2010 and former Chief of Police, Freddy Drennan on June 25, 2010, in which Dr. Pinkney certified that as of July 15, 2010, Plaintiff was capable of performing the administrative duties of his position as a senior corrections peace officer, as opposed to the full duties of his position; the return to work approval form contains an empty blank for a "return to duty date" and a blank after the phrase "return date approved by," which apparently bears the signature of former Chief of Police Freddy Drennan; and (5) a letter from attorney Ryan Hughes to Dr. Klein indicating that, pursuant to subpoenas attached to Mr. Hughes' letter, Dr. Klein must appear at a trial at the Office of Workers' Compensation on November 29, 2010 in Plaintiff's workers' compensation case, "Troy Franklin v. City of Slidell," OWC No. 09-07345 (Rec. Doc. 22-2, p. 8); (6) two releases signed by Plaintiff, one of which Plaintiff signed on August 11, 2010 authorizing Dr. Klein to release the results of his August 11, 2010 fit for duty exam to the Slidell Police Department for the purposes of determining his fitness for duty as a police officer (Rec. Docs. 22-3, 22-4); and (7) the second and third pages of the fitness for duty evaluation that Dr. Klein performed on Plaintiff (Rec. Doc. 22-5). Because Dr. Klein has filed a Rule 12(b)(6) motion to dismiss Plaintiff's complaint, the Court has not considered Dr. Klein's exhibits in ruling on the instant motion.

[4] In support of this contention, Plaintiff directs the Court's attention to Dr. Klein's written proposal to perform psychological evaluation, dated June 22, 2010, in which Dr. Klein informed Chief Randy Smith that the cost for a preemployment psychological evaluation, including written report and consultation, is $300.000 and that "a formal contract for services [would] not

to Dr. Klein's Mot. to Dismiss, Rec. Doc. 27, p. 2)

On December 3, 2010, Plaintiff filed a Charge of Discrimination with the EEOC, alleging that the City of Slidell and the Slidell Police Department discriminated against him on the basis of his race and disability and retaliated against him. (Ex. L to Pl.'s Opp. to City Def.'s Mot. to Dismiss, Charge of Discrimination, Rec. Doc. 12-1, p. 47) In the Charge of Discrimination, Plaintiff described the allegedly discriminatory events as follows:

> I was released for return to work on July 15, 2010. Chief Randy Smith informed me I had to take a physical. Around August 13, 2010, I was told that I couldn't go back to work because I failed part of the physical. I believe I'm being discriminated against because of my race, Black, disability and in retaliation for filing a previous charge of discrimination with EEOC. Although I was released for work by my doctor, Chief Smith informed me I couldn't return to work because I was psychotic, delusional, and paranoid. Base [sic] on information provided by Dr. Alan James Klein Ph.D. It also stated that I was not fit to work for any law enforcement agency.

(Ex. L to Pl.'s Opp. to City Def.'s Mot. to Dismiss, Charge of Discrimination, Rec. Doc. 12-1, p. 47)

The United States Equal Opportunity Employment Commission ("EEOC") concluded that based upon its investigation, it was unable to conclude that the information obtained established violations of Title VII, the ADA, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment

be required by [his] office." (Rec. Doc. 27, p. 2; Rec. Doc. 27-1, p. 5)

Act. On April 27, 2012, the EEOC mailed Plaintiff a Notice of Right to Sue. (Compl., Rec. Doc. 1, p. 3, ¶ 12)

### PARTIES' ARGUMENTS

Dr. Klein argues that Plaintiff's claims against him under Title VII should be dismissed, because Title VII only authorizes claims against a Plaintiff's employer or agent. Dr. Klein further argues that Plaintiff has failed to state a claim against him for violation of the ADA, because: (1) Dr. Klein has no employment relationship with Plaintiff, and (2) Plaintiff failed to allege that he is disabled or plead any facts that would suggest he has a disability and is thus a member of a protected class under the ADA. Lastly, Dr. Klein argues that Plaintiff's claims against Dr. Klein sound in medical malpractice under the factors articulated in Coleman v. Deno, 2001-1517 (La. 1/25/02); 813 So. 2d 303, and must be dismissed, because they are prescribed. Specifically, Dr. Klein argues that Louisiana Revised Statute 9:5628 provides that an action for medical malpractice must be brought within one year of the alleged malpractice. Dr. Klein asserts that Plaintiffs' claims against him arise out of a fitness for duty evaluation performed on August 11, 2010, nearly two years before Plaintiff filed suit. Thus, Dr. Klein asserts that Plaintiff's claims are prescribed.

In response to Dr. Klein's motion, Plaintiff has filed an opposition, consisting primarily of additional factual

allegations, which the Court has summarized above and treated as amendments to Plaintiff's Complaint. Plaintiff's opposition also included sixteen exhibits of supporting documentation.

## LEGAL STANDARD

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (citing McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re Southern Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). A court must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009). However, the Court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. Plotkin v. IP Axess Inc., 407 F.3d 690, 696

(5th Cir. 2005). While legal conclusions may provide the
framework of a complaint, they must be supported by factual
allegations. <u>Iqbal</u>, 556 at 679. As the Fifth Circuit has
explained:

> It is well-established that 'pro se complaints are held
> to less stringent standards than formal pleadings
> drafted by lawyers.  However, regardless of whether the
> plaintiff is proceeding pro se or is represented by
> counsel, 'conclusory allegations or legal conclusions
> masquerading as factual conclusions will not suffice to
> prevent a motion to dismiss.'

<u>Taylor</u>, 296 F.3d at 378 (internal citations omitted). In deciding
a 12(b)(6) motion to dismiss for failure to state a claim,
"courts must limit their inquiry to the facts stated in the
complaint and the documents either attached to or incorporated in
the complaint." <u>Lovelace v. Software Spectrum, Inc.</u>, 78 F.3d
1015, 1017 (5th Cir. 1996).

## DISCUSSION

**A. Plaintiff's Claims Against Dr. Klein under Title VII**

Dr. Klein argues that Plaintiff's Title VII claim against
him must be dismissed, because he is neither Plaintiff's employer
nor an "agent" of Plaintiff's employer for purposes of Title VII.
According to Dr. Klein, the determination of whether a person is
an "employer" under Title VII is a two part-analysis in which the
alleged employer must meet the statutory definition of "employer"
and also have an employment relationship with the Plaintiff. Dr.
Klein argues that he does not satisfy either prong of the

analysis, because he does not have fifteen or more employees as required by 42 U.S.C. 2000e(b) and he did not have any employment relationship with Plaintiff. Dr. Klein asserts that the second prong of the analysis — whether an employment relationship exists — is a factual determination that depends upon several factors designed to assess the level of control asserted by the purported employer, as well as the economic relationship between the plaintiff and the purported employer. Dr. Klein contends that he does not satisfy the second prong of the test, because, *inter alia*, he had no authority to hire, fire, and supervise Plaintiff; he did not set Plaintiff's work schedule; he had no involvement in the terms of Plaintiff's employment with the City of Slidell; and he did not pay Plaintiff's salary or provide him with benefits. Dr. Klein similarly argues, relying heavily on authority from outside the Fifth Circuit, that he was not an "agent" of Plaintiff's employer for purposes of Title VII, because he had no authority to carry out the directions of Plaintiff's employer.

Dr. Klein's arguments are not properly raised on a 12(b)(6) motion to dismiss, because assessing their merit would require the Court to look beyond the pleadings to make a factual determination.[5] Nevertheless, it is apparent to the Court,

---

[5] "Whether an employment relationship exists is a *factual determination* that depends on the level of control asserted by the purported employer and the economic relationship." (Dr. Klein's Mot. to Dismiss, Rec. Doc. 22-1, p.

looking exclusively at Plaintiff's Complaint, as amended to include the additional factual allegations made in his response to Dr. Klein's motion, that Plaintiff has failed to state a Title VII claim against Dr. Klein. Among other things, Plaintiff alleges that Dr. Klein, in concert with several other defendants, intentionally took action to retaliate against him for filing a discrimination complaint and civil lawsuit. However, Plaintiff has not alleged that Dr. Klein was his employer or that Dr. Klein exercised any control over Plaintiff's employment or had any economic relationship with Plaintiff. Instead, Plaintiff alleges that he was employed by the City and that Dr. Klein acted as the City's paid agent in performing the fitness for duty evaluation which formed the basis for Chief Smith's decision to relieve Plaintiff of all duties with the Slidell Police Department. (Rec. Doc. 27, p. 1; Rec. Doc. 1, p. 1) However, whether Dr. Klein acted as the City's "agent," for purposes of Title VII, in performing the allegedly retaliatory fitness for duty evaluation is immaterial, because a plaintiff may not maintain a Title VII claim against both his employer and the agents or employees of his employer. Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 382 n. 1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities); Smith v.

---

5) (emphasis added).

Arnedisys, Inc., 298 F.3d 434, 449 (5th Cir. 2002); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999). To the extent that Plaintiff maintains that Chief Smith's decision to require him to submit to a psychological fitness for duty evaluation was a form of retaliation for Plaintiff's decision to file a discrimination complaint and civil lawsuit, the proper defendant is Plaintiff's alleged employer, the City. Thus, the Court finds that Plaintiff's purported Title VII discrimination and retaliation claims against Dr. Klein should be dismissed.

**B. Plaintiff's Claims Against Dr. Klein Under the ADA**

The provision of the ADA that Plaintiff relies on provides that "[a] *covered entity* shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C.A § 12112(c)(4)(A) (2009). The ADA defines "covered entity" as "an employer, employment agency, or labor organization, or joint labor-management committee." 42 U.S.C.A § 12111(2) (2009). The ADA further defines "employer" as "a person engaged in industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and *any agent of such person* . . ." 42 U.S.C.A § 12111(5)(A) (2009) (emphasis

added). According to Plaintiff, Dr. Klein was hired by his employer to perform a psychological fitness for duty evaluation on him and rendered an opinion that Plaintiff was not fit for duty that did not comply with ADA standards in that it was not based on evidence of direct threat. Dr. Klein argues that these allegations do not state a legally cognizable claim against him under the ADA, because he is not Plaintiff's employer.[6] Although Plaintiff does not allege that he had any employment relationship with Dr. Klein in the traditional sense, he claims that Dr. Klein became his employer's agent when the City hired him to perform Plaintiff's psychological fitness for duty evaluation. These allegations are indicative of Plaintiff's belief that he may assert an ADA claim against Dr. Klein based on the agent provision in the ADA definition of "employer."

The Fifth Circuit has not addressed the question whether an employer's agent or employee may be held liable under the ADA. However, the ADA definition of "employer" mirrors Title VII's definition of employer in that it expressly extends to "any agent" of the employer. The Fifth Circuit has rejected a literal reading of the agent provision in Title VII, reasoning that the purpose of the agent provision was to incorporate respondeat superior liability into Title VII. Grant v. Lone Star Co., 21

_____

[6] Dr. Klein alternatively argues that Plaintiff has failed to allege that he is a member of a protected class under the ADA. The Court declines to address this issue, because Dr. Klein's first argument is dispositive.

F.3d 649, 653 (5th Cir. 1994). The Fifth Circuit has also

repeatedly held, in spite of the agent provision in Title VII,

that individuals, in particular employees and supervisors, cannot

be held liable under Title VII in either their individual or

official capacities. <u>Ackel</u>, 339 F.3d at 382 n. 1 (district court

properly dismissed Title VII claims against supervisor and

employer's former president and general manager); <u>Smith</u>, 298 F.3d

at 448 (district court properly dismissed Title VII claims

against plaintiff's supervisors, because plaintiff was precluded

from holding employees liable in their individual capacities and

from asserting a Title VII claim against both an employer and its

agents in an official capacity); <u>Indest</u>, 164 F.3d at 260

(district court properly dismissed Title VII claims against

employee).

Although neither the Supreme Court nor the Fifth Circuit

have explicitly considered whether individuals may be held liable

under Title I of the ADA, several circuit courts have concluded

that individuals may not be held liable under the ADA, despite

the agent provision in the definition of "employer."[7] <u>See, e.g.</u>,

---

[7] In support of their position, these courts have reasoned that the
agent provision was designed to establish limits on the employer's liability
for its employees' actions and to incorporate respondeat superior liability
into the statute. <u>See</u> <u>Roman-Oliveras</u>, 655 F.3d at 5. They have also noted that
changes in Title VII's remedial scheme which were enacted in 1991 — and
applicable to the ADA as well as Title VII — supported the conclusion that
individuals were not subject to liability under either statute. <u>Id.</u> at 51.
Before the 1991 amendment to the remedial scheme, the types of damages
recoverable were limited to backpay and other forms of equitable relief which
a plaintiff could typically only obtain from an employing entity, not an

<u>Roman-Oliveras v. Puerto Rico Elec. Power Auth.</u>, 655 F.3d 43, 51-52 (1st Cir. 2011) (holding that plaintiff's claims under Title I of the ADA against co-workers were properly dismissed in accordance with the "virtually universal view" that Title I of the ADA, like Title VII, does not impose individual liability); <u>Walsh v. Nevada Dep't of Human Res.</u>, 471 F.3d 1033, 1037-38 (9th Cir. 2006); <u>Fasano v. Fed. Reserve Bank of New York</u>, 457 F.3d 274, 289 (3d Cir. 2006); <u>Pritchard v. S. Co. Servs.</u>, 102 F.3d 1118, 1118 n. 7 (11th Cir. 1996) (individual liability precluded under Title I of ADA in light of the similarities between Title VII and ADA definitions of "employer" and the Circuit's previous holding that there is no individual liability under Title VII); <u>Butler v. City of Prairie Vill.</u>, 172 F.3d 736, 744 (10th Cir. 1999) ("Because we can discern no meaningful distinction between the definitions of 'employer' in Title VII and the ADA . . . we now hold that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."); <u>Corr v. MTA Long Island Bus</u>, No. 98-9417, 1999 WL 980960, at *2 (2d Cir. Oct. 7, 1999) (unpublished);

---

individual. <u>Id.</u> The 1991 amendments added compensatory and punitive damages, items of damages that could be paid by individuals, but capped the amounts based on the number of workers employed by a particular employer without providing a cap for cases in which a plaintiff seeks to hold an individual liable. <u>Id.</u> Thus, these courts reason that the addition of graduated compensatory and punitive damages based on the number of workers employed without provision for individuals indicates that the amendments to the ADA and Title VII remedial scheme did not contemplate liability for individuals who are not the employing entity. <u>See</u> <u>id.</u> at 51-52.

U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1281 (7th Cir. 1995) (rejecting the argument that employer's president could be held liable under the "plain language" of the agent provision in the ADA on the grounds that "agent" provision was designed to render employers vicariously liable for the acts of their agents).

Moreover, the district courts within the Fifth Circuit that have considered the issue have similarly concluded that there is no individual liability under the ADA. Starkman v. Evans, 18 F. Supp. 2d 630, 632 (E.D. La. 1998) (finding that employee could not be held individually liable under the ADA); Robertson v. Neuromedical Ctr., 983 F. Supp. 669, 670 n. 1 (M.D. La. 1997) (dismissing ADA claims against several individual doctors and reasoning that "as there is no individual liability under Title VII or the ADEA, so likewise there should be no individual liability under the ADA"). Likewise, this Court recently observed that a public official could not be held individually liable under the ADA. Bellow v. Board of Supervisors, No. 12-1529, 2012 WL 6697180, at *8 (E.D. La. Dec. 21, 2012). Considering (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of

the Fifth Circuit, this Court finds that individuals are not subject to liability under Title I of the ADA. Thus, the Court finds that Plaintiff's ADA claim against Dr. Klein is not legally cognizable and should be dismissed.

**C. Plaintiff's Claims Against Dr. Klein Under Louisiana Law**

Dr. Klein argues that Plaintiff's vague allegations that he: (1) failed to use proper judgment in evaluating him, and (2) based his conclusion that Plaintiff was unfit for duty on improper information, sound in medical malpractice under the <u>Coleman</u> factors.[8] In his opposition, Plaintiff states that two other doctors later disagreed with Dr. Klein's opinion and that he believes that Dr. Klein rendered his opinion to obtain future work from the City. The Court finds that Plaintiff has failed to state a claim against Dr. Klein under Louisiana law. The Court also finds that it is unnecessary to determine whether Plaintiff's claims specifically sound in medical malpractice under the <u>Coleman</u> factors,[9] because it is evident from the face

---

[8] In <u>Coleman v. Deno</u>, 2001-1517 (La. 1/25/02); 813 So. 2d 303, the Louisiana Supreme Court set forth the following factors for determining whether a claim sounds in medical malpractice: (1) whether the particular wrong is treatment related or caused by a dereliction of professional skill, (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, (3) whether the pertinent act or omission involved assessment of the patient's condition, (4) whether an incident occurred in the context of a physician-patient relationship or was within the scope of activities which a hospital is licensed to perform, (5) whether the injury would have occurred if the patient had not sought treatment, and (6) whether the tort alleged was intentional. <u>Id.</u> at 315-16.

[9] Because Plaintiff is proceeding *pro se*, the Court does not have the benefit of thorough briefing on the characterization issue and hesitates to accept Dr. Klein's argument that Plaintiff's allegations specifically sound in

of Plaintiff's complaint that any potential state law claims are prescribed.

The character of the action alleged in the petition determines the appropriate prescriptive period. Loew's, Inc. v. Don George, Inc., 110 So. 2d 553, 557 (La. 1959). The Court finds that Plaintiff's allegations against Dr. Klein sound in tort, regardless of whether they are construed as a claim for medical malpractice, specifically, professional malpractice, generally, or, alternatively, as a claim for defamation.[10] Under Louisiana law, the party asserting prescription bears the burden of proof, unless it is evident from the face of the pleadings that a claim is prescribed. King v. Phelps Dunbar, L.L.P., 98-1805 (La. 6/4/99); 743 So. 2d 181, 188. Under Louisiana law, delictual

---

medical malpractice for the following reasons. First, Plaintiff does not allege that he suffered personal injuries, in the traditional sense, as a result of Dr. Klein's alleged dereliction of professional skill. Instead, his alleged injury is being relieved from his duties with the Slidell Police Department based on Dr. Klein's opinion that he was not fit for duty in a law enforcement agency in any capacity. In Coleman, the Louisiana Supreme Court stated that "all medical malpractice claims are personal injury claims . . . ." Coleman, 813 So. 2d at 315. Second, with respect to the fifth Coleman factor — whether the injury would have occurred if the patient had not sought treatment — Plaintiff's employer allegedly hired Dr. Klein solely to render an opinion on Plaintiff's fitness for duty as a senior corrections officer, which is a form of professional service analogous to that which a consultant would provide, not to provide Plaintiff with treatment. Thus, the Court finds that the question of whether Plaintiff's claim is properly characterized as a medical malpractice claim warrants more consideration than the Court is willing to give it, considering the underdeveloped state of the briefing on the issue and the fact that it is unnecessary for the Court to resolve the issue to resolve the instant motion.

[10] The Court finds that Plaintiff's allegations cannot reasonably be construed to assert a contractual or quasi-contractual claim, which would be subject to a ten-year prescriptive period. See Loew's, Inc., 110 So. 2d at 557-59; La. Civ. Code. art. 3499.

(tort) claims are subject to liberative prescription of one-year, which runs from the date that the injury or damage is sustained. La. Civ. Code. art. 3492. Claims for defamation, professional malpractice,[11] and medical malpractice are all subject to a one-year prescriptive period. La. Civ. Code art. 3492; Clark v. Wilcox, 2004-2254 (La. App. 1 Cir. 12/22/05); 928 So. 2d 104, 111 (citing Wiggins v. Creary, 475 So. 2d 780, 781 (La. App. 1 Cir. 1985), writ denied, 478 So. 2d 910 (La. 1985)) ("Claims for defamation are delictual in nature and are subject to LSA-C.C. art. 3492's one-year prescriptive period, which commences to run from the day injury or damage is sustained."); La. Rev. Stat. 9:5604 (claims against accountants arising out of engagements to provide professional services subject to one year prescriptive period); La. Rev. Stat. 9:5606 (claims against insurance agents arising out of engagement to provide professional services subject to one-year prescriptive period); La. Rev. Stat. 9:5605 (claims against attorneys arising out of engagement to provide professional services subject to one year prescriptive period); La. Rev. Stat. 9:5628 (actions for damages for injury or death arising out of patient care, against physicians or licensed psychologists, whether based upon tort, contract, or otherwise, are subject to one-year prescriptive period).

---

[11] There is an exception to this general rule for actions against architects, engineers, or contractors, which are subject to a five or ten year prescriptive period. La. Civ. Code art. 3500; La. Rev. Stat. 9:5607.

For defamation claims, the one-year prescriptive period commences when the plaintiff gains knowledge of the damage-causing publication by the defendant. <u>Clark</u>, 928 So. 2d at 112. Here, Plaintiff's complaint and charge of discrimination demonstrate that Plaintiff learned that Dr. Klein reported to Chief Smith that he was not fit for duty sometime in August or September of 2010 when Chief Smith relieved him of his duties with the Slidell Police Department. Thus, prescription accrued on any potential defamation claim sometime during August or September of 2011, well in advance of the filing of the instant suit on July 26, 2012 (Compl., Rec. Doc. 1; Charge of Discrimination, Rec. Doc. 12-1, p. 47) For tort claims, claims of medical malpractice, and other forms of professional malpractice, the prescriptive period begins to run on the date of the alleged act, omission, or neglect or on the date of discovery of the injury. La. Rev. Stat. §§ 9:5604-5606; 9:5628. In the instant case, Plaintiff alleges that Dr. Klein found him to be unfit for duty in a letter dated August 20, 2010, and that Chief Smith sent him a letter relieving him of all duties with the Slidell Police Department on September 2, 2010. The only logical inference the Court can draw from this allegation is that Dr. Klein performed the evaluation at issue prior to August 20, 2010, and that Plaintiff was aware of his alleged injury when he was relieved of his duties in September 2010. Thus, any professional or medical

malpractice claims Plaintiff may have had against Dr. Klein were prescribed when he filed suit on July 26, 2012, nearly two years after he was evaluated and relieved of his duties with the Slidell Police Department.

Finally, "[d]istrict courts should not dismiss *pro se* complaints pursuant to Rule 12(b)(6) without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case." Hale v. King, 642 F.3d 492, 503 (5th Cir. 2011) (citations omitted) (alterations added). Although "the definition of a plaintiff's 'best case' has been deemed 'elusive,'" in determining whether a *pro se* plaintiff has pled his best case, courts generally review the record to determine whether the plaintiff could state a claim by amending his or her complaint. See Amanduron v. American Airlines, 416 Fed. Appx. 421, 423 (5th Cir. 2011). If a *pro se* plaintiff gives no indication of what material facts he would include in an amended complaint, the district court may exercise its discretion to deny the plaintiff leave to amend. See Kastner v. Lawrence, 390 Fed. Appx. 311, 317 (5th Cir. 2010). After reviewing the record, in addition to Plaintiff's complaint and opposition, the Court finds that Plaintiff has failed to indicate what material facts he would include in an amended complaint. Because the Court also finds that it is obvious from the record that Plaintiff has pled his best case against Dr. Klein, the

Court will not grant Plaintiff an opportunity to amend his complaint. Accordingly,

**IT IS HEREBY ORDERED** that Dr. Klein's 12(b)(6) Motion to Dismiss **(Rec. Doc. 22)** is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Dr. Klein are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 6th day of March, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE