UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY REGINALD FRANKLIN                    CIVIL ACTION

VERSUS                                     NO: 12-1940

CITY OF SLIDELL, ET AL.                    SECTION: J(1)

## ORDER AND REASONS

Before the Court is a 12(b)(6) Motion to Dismiss for Failure to State a Claim **(Rec. Doc. 10)**, filed by Defendants, the City of Slidell and six of its employees (collectively "the City Defendants"). Plaintiff has filed an opposition (Rec. Doc. 12), to which the City Defendants have replied. (Rec. Doc. 25) Both the Plaintiff and the City Defendants have filed supplemental memoranda. (Rec. Docs. 32, 37) The City Defendants' motion was set for hearing on the briefs on September 12, 2012.[1] Having

---

[1] The City Defendants'12(b)(6) Motion to Dismiss (Rec. Doc. 10) was automatically referred to United States Magistrate Judge Sally Shushan and set for hearing at 9:00 a.m. on September 12, 2012. (Rec. Docs. 10, 17) However, the Court vacated the automatic referral on September 24, 2012, before the Judge Shushan had taken any action on the motion, because one of the parties notified the Court that they would not consent to trial before a Magistrate. (Rec. Docs. 16, 17)

1

considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the City Defendants' motion should be **GRANTED IN PART** and **DENIED IN PART**, for reasons explained more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

On July 26, 2012, Plaintiff, Troy Franklin, filed the instant *pro se* employment discrimination lawsuit. (Compl., Rec. Doc. 1) Plaintiff alleges that his employer violated the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101-12213 et seq., and the ADA regulations by: (1) disclosing his medical information, (2) requiring him to take a medical and psychological fitness for duty evaluation before returning to work from medical leave, and (3) not allowing him to return to work after he failed a fitness for duty evaluation, thereby forcing him to use his personal vacation and sick time. (Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 2) Plaintiff also alleges that the City Defendants intentionally violated his rights and retaliated against him for filing a discrimination complaint and civil lawsuit, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e et seq. (Compl., Rec. Doc. 1, p. 1) Plaintiff also makes claims under 42 U.S.C. § 1981 for racial discrimination, and claims under Louisiana law. Plaintiff seeks

the following nonexclusive items of damages: (1) back pay with benefits, front pay with benefits, or retirement if front pay is not a viable option, (2) general damages for loss of reputation, inconvenience, and the abuse he allegedly received, (3) punitive damages, (4) costs, and (5) all other equitable relief the Court deems proper. (Compl., Rec. Doc. 1, p. 3)

Plaintiff alleges that he is an African-American and that he was formerly employed by the City of Slidell as a senior corrections officer in the Slidell Police Department.[2] (Compl., Rec. Doc. 1, p. 1; Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1) Plaintiff further alleges that in September 2010, the Slidell Chief of Police, Randy Smith, relieved him of all duties with the Slidell Police Department after Dr. James

[2] Because Plaintiff is proceeding *pro se*, the Court has construed his opposition and supplemental opposition to the City Defendants' motion as a motion to amend his Complaint, which the Court grants. See Riley v. Sch. Bd. Union Parish, 379 Fed. Appx. 335, 341 (5th Cir. 2010) ("Under our precedent, when a claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a) . . . . this is particularly true where, as here, the litigant is *pro se* and has not yet made any amendments to her complaint.") (citations omitted); Smith v. Lonestar Constr. Co., Inc., 456 F. App'x 475, 476 (5th Cir. 2011) (courts must "liberally construe the briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel."); Johnson v. Atkins, 999 F.2d 99, 100 (5th Cir. 1993) ("A *pro se* complaint is to be construed liberally . . . "). Thus, the summary of Plaintiff's Complaint includes both the allegations that Plaintiff makes in his Complaint and in his opposition to the City Defendants' motion. See McClinton v. Sam's East, Inc., No. 11-2156, 2012 WL 4483492, at *1 (W.D. La. Sept. 28, 2012) (considering facts alleged in *pro se* plaintiff's complaints and oppositions in ruling on 12(b)(6) motion to dismiss); Dean v. City of New Orleans, No. 11-2209, 2012 WL 2564954, at *1 (E.D. La. July 2, 2012) (considering *pro se* litigant's written opposition in ruling on Rule 12(c) motion for judgment on the pleadings).

Klein ("Dr. Klein") evaluated Plaintiff and found that he was not fit for duty as a law enforcement officer. (Compl., Rec. Doc. 1, p. 2, ¶¶ 8-9) Plaintiff subsequently filed suit against the City of Slidell ("the City"), Dr. Klein,[3] and six City employees, including: (1) Chief Randy Smith ("Chief Smith"), of the Slidell Police Department, (2) Captain Kevin Foltz ("Captain Foltz"), of the Slidell Police Department, (3) Captain Robert Jacobs ("Captain Jacobs"), of the Slidell Police Department, (4) Lieutenant Rockwell McLellan ("Lieutenant McLellan"), of the Slidell Police Department, (5) D. Rene Johnson ("Johnson"), the Slidell Civil Service Personnel Director, and (6) Tim Mathison ("Mathison"), the City's Chief Administrative Officer (collectively "Employee Defendants"). (Compl., Rec. Doc. 1)

   In his Complaint, Plaintiff makes the following allegations. On September 5, 2008, he received a death threat from Captain Jacobs. (Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1) After receiving the death threat, he filed a complaint with the Slidell Police Department's Internal Affairs division and was referred to the employee assistance program. (Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1) An unidentified individual at the employee assistance program informed Plaintiff that he might be suffering from "Post Traumatic Syndrome." (Pl.'s

---

   [3] On March 6, 2013, the Court issued an order dismissing all of Plaintiff's claims against Dr. Klein. (Rec. Doc. 38)

4

Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1)
Thereafter, Plaintiff completed a "first report of injury"[4] and
was referred to Dr. Harold Ginzburg ("Dr. Ginzburg") for a
psychiatric evaluation. (Pl.'s Opp. to City Def.'s Mot. to
Dismiss, Rec. Doc. 12, p. 1) Dr. Ginzburg found that Plaintiff
was fit for duty but needed counseling. Dr. Ginzburg also
recommended that Plaintiff and Captain Jacobs be separated.
(Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1)
Captain Jacobs and Plaintiff were never separated. Thereafter,
Plaintiff reports that he received numerous unexpected visits
from Captain Jacobs and that he went out on sick leave "with the
understanding of Chief Freddy Drennan." (Pl.'s Opp. to Dr.
Klein's Mot. to Dismiss, Rec. Doc. 27, p. 1) Plaintiff kept
Freddy Drennan ("Chief Drennan"), then the Slidell Chief of
Police, informed of his progress in counseling, and in June 2010,
negotiated with Chief Drennan to return to work from sick leave.
(Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1)

On June 25, 2010, Chief Drennan signed an authorization
permitting Plaintiff to return to work on administrative duties.
(Compl., Rec. Doc. 1, p. 2, ¶ 1) In the middle of June 2010,
Lieutenant McLellan and Captain Foltz met with Chief Smith, then
the Chief-elect set to succeed Chief Drennan, and disclosed

---

[4] By "first report of injury," Plaintiff appears to be referring to a
workers' compensation claim that he filed several months after the incident in
which his former supervisor, Captain Robert Jacobs, threatened his life.

medical information to Chief Smith to lead him to believe that Plaintiff was not fit for duty. (Compl., Rec. Doc. 1, p. 2, ¶ 2) On July 1, 2010, his first day of office, Chief Smith wrote a letter requiring Plaintiff to submit to a fitness for duty evaluation. (Compl., Rec. Doc. 1, p. 2, ¶ 5; Pl.'s Opp., Rec. Doc. 12, p. 2) Plaintiff contends that Chief Smith did not give a valid reason for the fitness for duty evaluation and, thus, violated the ADA, ADA Amendments Act, and the Code of Federal Regulations, in particular 29 C.F.R. 825.380.[5] (Compl., Rec. Doc. 1, p. 2, ¶ 5; Pl.'s Opp., Rec. Doc. 12, p. 2) Plaintiff also contends that Johnson, the Slidell Civil Service Personnel Director, sent him a letter dated July 7, 2010 requiring him to take a medical and psychological fitness for duty evaluation, thereby violating the ADA and ADA Amendments Act of 2008, the Code of Federal Regulations, in particular 29 C.F.R. 825.380, and state law. (Compl., Rec. Doc. 1, p. 2, ¶ 6; Pl.'s Opp., Rec. Doc. 12, p. 2)

Plaintiff further asserts that Johnson sent a letter to Dr. Klein providing medical information and other information that reflected negatively on Plaintiff's fitness for duty. (Compl., Rec. Doc. 1, p. 2) Plaintiff asserts that in August 2010, Dr. Klein found him to be unfit for duty and that in September 2010,

---

[5] Although Plaintiff has cited this regulation, it does not appear to be applicable to this case.

6

Chief Smith relieved him of all duties and responsibilities with the Slidell Police Department. (Compl., Rec. Doc. 1, p. 3, ¶¶ 8-9) Plaintiff further alleges that Defendants placed him on leave without pay for 32 days taking all benefits, (2) terminated Plaintiff without giving him recourse to fight the termination, (3) removed money from his checking account, and (4) had false stories placed in the local newspaper which prevented him from obtaining new employment. (Pl.'s Mem. in Supp. of Opp., Rec. Doc. 37, p. 1) Plaintiff reports that after Chief Smith relieved him of his duties with the Slidell Police Department, Tim Mathison refused to speak to him and sent out an interoffice memo dated November 16, 2010 instructing all Department Directors and Chief Smith not to talk to him, thereby "eliminating the option for an Administrative Remedy." (Compl., Rec. Doc. 1, p. 3, ¶ 10) Plaintiff asserts that Captain Jacobs admitted in discovery in a prior lawsuit that he was monitoring Plaintiff because he made an official complaint to the Slidell Police Department administration and federal authorities. (Compl., Rec. Doc. 1, p. 3, ¶ 11)

On December 3, 2010, Plaintiff filed a Charge of Discrimination with the United States Equal Opportunity Commission ("EEOC") alleging that the City of Slidell and the Slidell Police Department discriminated against him on the basis

of his race and disability and retaliated against him. (Charge of
Discrimination, Ex. L to Pl.'s Opp. to City Def.'s Mot. to
Dismiss, Rec. Doc. 12-1, p. 47) In the Charge of Discrimination,
Plaintiff described the allegedly discriminatory events as
follows:

> I was released for return to work on July 15, 2010.
> Chief Randy Smith informed me I had to take a physical.
> Around August 13, 2010, I was told that I couldn't go
> back to work because I failed part of [sic] physical. I
> believe I'm being discriminated against because of my
> race, Black, disability and in retaliation for filing a
> previous charge of discrimination with EEOC. Although I
> was released for work by my doctor, Chief Smith
> informed me I couldn't return to work because I was
> psychotic, delusional, and paranoid. Base [sic] on
> information provided by Dr. Alan James Klein Ph.D. It
> also stated that I was not fit to work for any law
> enforcement agency.

(Ex. L to Pl.'s Opp., Charge of Discrimination, Rec. Doc.
12-1, p. 47)

The EEOC concluded that based upon its investigation, it was
unable to conclude that the information obtained established
violations of Title VII, the ADA, the Genetic Information
Nondiscrimination Act, or the Age Discrimination in Employment
Act. On April 27, 2012, the EEOC mailed Plaintiff a Notice of
Right to Sue. (Compl., Rec. Doc. 1, p. 3, ¶ 12). On August 21,
2012, the City Defendants filed the instant 12(b)(6) Motion to
Dismiss. (Rec. Doc. 12) On September 5, 2012, Plaintiff filed an
opposition. (Rec. Doc. 12) On November 6, 2012, the Court granted

the City Defendants leave to reply. (Rec. Doc. 13) On January 21, 2013, the City Defendants filed a supplemental memorandum in support of their motion to dismiss. (Rec. Doc. 32) On March 1, 2013, Plaintiff filed a response to the City Defendants' supplemental memorandum in support of their motion. (Rec. Doc. 37)

## PARTIES' ARGUMENTS

The City Defendants make the following arguments:

First, they argue that all of Plaintiff's claims against the Employee Defendants should be dismissed because Plaintiff cannot maintain a Title VII claim against both his employer, the City, and the City's individual agents. Alternatively, the City Defendants report that Plaintiff failed to name the Employee Defendants in his EEOC Charge of Discrimination, and, therefore, they contend that the Court should dismiss all of Plaintiff's claims against the Employee Defendants as premature for failure to exhaust his administrative remedies.

Second, the City Defendants argue that Plaintiff's ADA claims against the City should be dismissed for two reasons. First, Defendants contend that Plaintiff's ADA claim must be dismissed because Plaintiff has failed to allege any facts showing that he was a qualified individual with a disability, as defined in 42 U.S.C. § 12102(1). The City Defendants contend that

this is a basic requirement necessary to sustain a cause of action under the ADA. Second, the City Defendants argue that Plaintiff's ADA claim under 42 U.S.C. § 12112(d), relating to the alleged disclosures of medical information, should be dismissed, because Plaintiff failed to include them in the Charge of Discrimination submitted to the EEOC, thereby failing to exhaust his administrative remedies. Alternatively, they argue that Plaintiff has failed to state a claim for release of confidential medical information under 42 U.S.C. § 12112(d), because he has failed to allege any facts indicating that the City or its employees disclosed any medical information protected under Section 12112(d). The City Defendants contend that Plaintiff's allegation that Johnson provided medical information to Dr. Klein is insufficient. Specifically, they argue that Plaintiff failed to specify what medical information Johnson provided to Dr. Klein and failed to explain how he was damaged by the alleged disclosure.

Third, the City Defendants argue that Plaintiff's claims under Title VII and Section 1981 should be dismissed. Without identifying particular deficiencies in Plaintiff's complaint, the City Defendants contend that his Title VII and Section 1981 claims should be dismissed *in their entirety*, because Plaintiff made no effort to set forth allegations that would substantiate a

prima facie case of employment discrimination under the McDonnell Douglas framework, namely that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) he was replaced by someone outside the protected class, or, in the case of disparate treatment, was treated less favorably than similarly situated employees.[6]

Fourth, the City Defendants argue that Plaintiff's claims for punitive damages should be dismissed. They contend that they are immune from punitive damages under 42 U.S.C. § 1981a(b)(1). They argue that in 42 U.S.C. § 1981a(b)(1), Congress expressly prohibited punitive damage awards against state governmental actors, and that courts apply the same analysis for federal race discrimination claims pursuant to Title VII, 42 U.S.C. 2000e, and the Civil Rights laws, 42 U.S.C. §§ 1981, 1983, and 1985. Consequently, the City Defendants contend that Plaintiff's Title VII discrimination claim must be reviewed in light of the Civil Rights laws. The City Defendants also assert that Plaintiff cannot recover punitive damages from the Employee Defendants, because the Fifth Circuit has held that state actors operating in an individual capacity are not liable for punitive damages

---

[6] In support of this argument, the City Defendants rely on John Bryan v. McKinsey & Co., Inc., 375 F.3d 358 (5th Cir. 2004) and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

associated with Title VII discrimination claims.

Fifth, the City Defendants argue that under Title 42 U.S.C. § 2000e-5(f)(1), Plaintiff's claims against the City, a municipality, should be stayed pending Plaintiff's receipt of a Right to sue letter from the Department of Justice. Although the EEOC issued Plaintiff a Right to sue letter on April 27, 2012, the City Defendants contend that under 42 U.S.C. § 2000e-5(f)(1), the EEOC is required to refer Plaintiff's Charge of Discrimination against the City to the Department of Justice. They assert that there is no evidence that the EEOC has done that. Although the City Defendants note that failure of the EEOC to obtain a Right to sue letter from the Department of Justice is not dispositive, they assert that the failure is a procedural defect that must be cured, and that Plaintiff should be required to seek a Right to sue letter from the Department of Justice before proceeding with any of his claims against the City.

In response to the City Defendants' motion, Plaintiff filed an opposition, consisting primarily of additional factual allegations, which the Court has summarized above and treated as amendments to Plaintiff's Complaint. Plaintiff's opposition also included sixteen exhibits of supporting documentation.[7]

In their reply, the City Defendants argue that despite his

---

[7] Considering that this is a 12(b)(6) motion to dismiss, the Court has not considered this documentation.

amendments, Plaintiff's complaint still fails to state a cause of action under the ADA, Title VII, or Section 1981.[8] With regard to Plaintiff's ADA claim stemming from the fitness for duty evaluation, the City Defendants argue that Plaintiff's allegation that he was required to take a fitness for duty examination, even when considered with Plaintiff's allegations that he suffered from "post-traumatic syndrome" and took medical leave from work, does not establish a violation of the ADA. They assert that simply being required to take a fitness for duty exam is not an ADA violation. The City Defendants assert that under 42 U.S.C. § 12112(d)(4)(A), an employer may not require a medical examination to determine whether an employee is disabled, "unless such examination or inquiry is shown to be job-related and consistent with business necessity." The City Defendants assert that courts have recognized the business necessity exception in the context of police departments, because police departments place officers in positions where they can inflict harm if they act irrationally.  (City Def.'s Reply, Rec. Doc. 25, p. 2-3) The City Defendants contend, relying on <u>Brownfield v. City of Yakima</u>, 612 F.3d 1140, 1145 (9th Cir. 2011) and <u>Conroy v. New York State</u>

---

[8] The City Defendants assert that the additional allegations in Plaintiff's opposition regarding a past conflict with his former supervisor, Captain Robert Jacobs, were fully litigated in Plaintiff's prior employment discrimination action and are, therefore, irrelevant, because: (1) they are time-barred; and (2) they cannot be re-litigated in this Court under principles of res judicata.

<u>Department of Correctional Services</u>, 333 F.3d 88 (2d Cir. 2003), that the ADA does not "require a police department to forego a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries," but rather, allows the employer to require a medical examination "when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." (City Def.'s Reply, Rec. Doc. 25, p. 3) The City Defendants assert that in light of Plaintiff's allegation that he was a Senior Corrections Officer for the Slidell Police Department, it was "necessary and permissible" for the City to ensure that he could return to active duty safely before allowing him to do so.[9]  (City Def.'s Reply, Rec. Doc. 25, p. 3)

    Both parties have filed supplemental memoranda. (Rec. Docs. 32, 37) In their supplemental memorandum, the City Defendants: (1) contend that Plaintiff failed to provide sufficient allegations to sustain a cause of action for discrimination or retaliation in violation of the ADA and Title VII,[10] and (2)

_____

    [9] The Court notes that the City Defendants' argument in their original memorandum in support of their motion is ambiguous with respect to whether they are also seeking dismissal of Plaintiff's ADA claim stemming from being required by his employer to undergo physical and psychological fitness for duty examinations. See <u>infra</u> Discussion Section 3(c).

    [10] The Court notes that in their original memorandum, the City Defendants contended that Plaintiff failed to provide sufficient allegations to sustain a cause of action for *discrimination* in violation of Title VII, Section 1981, and the ADA, but did not address Plaintiff's retaliation claim or explain how Plaintiff's allegations were insufficient to state a claim for

report that Plaintiff has provided evasive answers in his

discovery responses that shed no light on the factual basis for

his claims, in particular his retaliation and discrimination

claims.[11] (City Def.'s Supplemental Mem. in Supp. of Mot., Rec.

---

retaliation in violation of Title VII.

[11] In particular, the City Defendants focus on Plaintiff's response to Interrogatories Eight and Nine. Interrogatory Eight stated:

> In your Complaint you contend that the defendants intentionally took action to violate your rights in retaliation for your filing a discrimination complaint and/or civil lawsuit. As to each individual defendant, please provide: a detailed description of the act or conduct; the date of each act; the basis for your allegation that this act or conduct was related to retaliation; the identity of all persons participating in such act; any persons witnessing or having knowledge of such act; and, the identity of each person to whom you reported the alleged discriminatory act or conduct and the date of such report.

In response, Plaintiff wrote:

> Objection. This discovery request is so broad and unlimited as to time and scope as to be an unwarranted annoyance embarrassment, and is oppressive. To comply with the request would be an undue burden and expense on the plaintiff. The request is calculated to annoy and harass plaintiff. This discovery request as phrased is argumentative. It requires the adoption of an assumption, which is Improper. Any discovery request that requires the adoption of an assumption is argumentative. Objection. The information sought in this discovery request is equally available to the propounding party.

 (Ex. A to City Def.'s Supplemental Mem. in Supp. of Mot., Rec. Doc. 32-1, p. 5-6)

 Interrogatory number nine stated:

> Please identify any act of discriminatory conduct referred to in your Complaint, including for each separate act: a detailed description of the act or conduct; the date of each act; the identity of all persons participating in such act; any persons witnessing or having knowledge of such act; and, the identity of each person to whom you reported the alleged discriminatory act or conduct and the date of such report.

Doc. 32, p. 1) They have also attached Plaintiff's responses to interrogatories and requests for production of documents. (Ex. A to City Def.'s Supplemental Mem. in Supp. of Mot., Rec. Doc. 32-1)

In his supplemental opposition, Plaintiff asserts that: (1) the City Defendants, to date, have not answered his complaint and are in possession of his discovery responses but are concerned that Plaintiff might have incriminating impeachment evidence against some of the Defendants; and (2) the only reason the City Defendants filed their supplemental memorandum was to cast the Plaintiff in a negative light before the Court. Plaintiff also points out that the City Defendants filed a Motion to Compel answers to the discovery in question.

## LEGAL STANDARD

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378 (5th Cir. 2002) (citing <u>McConathy v. Dr. Pepper/Seven Up Corp.</u>, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the

---

Plaintiff wrote in response:

Objection. The information sought in this discovery request is equally available to the propounding party.

(Ex. A to City Def.'s Supplemental Mem. in Supp. of Mot., Rec. Doc. 32-1, p. 7)

plaintiff must plead enough facts to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re Southern Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). A court must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009). However, the Court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). While legal conclusions may provide the framework of a complaint, they must be supported by factual allegations. Iqbal, 556 at 679. Although "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers . . . conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor, 296 F.3d at 378 (internal quotations and citations omitted). In deciding a 12(b)(6) motion to dismiss for failure to state a claim, "courts must limit their inquiry to

17

the facts stated in the complaint and the documents either attached to or incorporated in the complaint." Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017 (5th Cir. 1996). "District courts should not dismiss *pro se* complaints pursuant to Rule 12(b)(6) without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case." Hale v. King, 642 F.3d 492, 503 (5th Cir. 2011) (citations omitted) (alterations added). Although "the definition of a plaintiff's 'best case' has been deemed 'elusive,'" in determining whether a *pro se* plaintiff has pled his best case, courts generally review the record to determine whether the plaintiff could state a claim by amending his or her complaint. See Amanduron v. American Airlines, 416 Fed. Appx. 421, 423 (5th Cir. 2011). If a *pro se* plaintiff gives no indication of what material facts he would include in an amended complaint, the district court may exercise its discretion to deny the plaintiff leave to amend. See Kastner v. Lawrence, 390 F. App'x. 311, 317 (5th Cir. 2010).

## DISCUSSION

As a preliminary matter, the Court notes that it will not address the issues surrounding the parties' discovery dispute. Given that the Magistrate Judge has already addressed the City Defendants' arguments regarding the sufficiency of Plaintiff's

discovery responses and ordered him to respond fully, the Court finds that further discussion is unnecessary. (Rec. Doc. 35, p. 3) The Court will limit itself to determining the sufficiency of Plaintiff's complaint, as amended.

**A. Plaintiff's Claims Under Federal Law**

**1. Plaintiff's Claims Against Employee Defendants Under Title VII and the ADA**

Plaintiff has alleged that he was employed by the City as a senior corrections officer with the Slidell Police Department for over twenty years before Chief Smith relieved him of his duties. (Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1) Plaintiff has asserted that  the Employee Defendants are proper defendants because they were either employees or agents of the City or agents of a City employee. (Compl., Rec. Doc. 1, p. 1-2) The Court disagrees. A plaintiff may not maintain a Title VII claim against both his employer and the agents or employees of his employer. Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 382 n. 1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities); Smith v. Arnedisys, Inc., 298 F.3d 434, 449 (5th Cir. 2002); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999). Thus, to the extent that Plaintiff is asserting claims against the Employee Defendants under Title VII, the Court finds that

19

they are not legally cognizable.

Furthermore, the ADA definition of "employer" mirrors the Title VII definition. Although the Fifth Circuit has not directly addressed the question of whether an employer's agent or employee may be held liable under the ADA, this Court recently concluded that in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit,[12] individuals are not subject to liability under Title I of the ADA. (Order and Reasons, Rec. Doc. 38, p. 13-18) Thus, to the extent that Plaintiff is asserting claims against the Employee Defendants

---

[12] See, e.g., Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 51-52 (1st Cir. 2011) (holding that plaintiff's claims under Title I of the ADA against co-workers were properly dismissed in accordance with the "virtually universal view" that Title I of the ADA, like Title VII, does not impose individual liability); Walsh v. Nevada Dep't of Human Res., 471 F.3d 1033, 1037-38 (9th Cir. 2006); Fasano v. Fed. Reserve Bank of New York, 457 F.3d 274, 289 (3d Cir. 2006); Pritchard v. S. Co. Servs., 102 F.3d 1118, 1118 n. 7 (11th Cir. 1996) (individual liability precluded under Title I of ADA in light of the similarities between Title VII and ADA definitions of "employer" and the Circuit's previous holding that there is no individual liability under Title VII); Butler v. City of Prairie Vill., 172 F.3d 736, 744 (10th Cir. 1999) ("Because we can discern no meaningful distinction between the definitions of 'employer' in Title VII and the ADA . . . we now hold that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."); Corr v. MTA Long Island Bus, No. 98-9417, 1999 WL 980960, at *2 (2d Cir. Oct. 7, 1999); U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1281 (7th Cir. 1995) (rejecting the argument that employer's president could be held liable under the "plain language" of the agent provision in the ADA on the grounds that "agent" provision was designed to render employers vicariously liable for the acts of their agents).

under the ADA, the Court finds that they are not legally cognizable. Because the Court finds that Plaintiff has pled his best case against the Employee Defendants under both the ADA and Title VII, the Court will dismiss his claims against the Employee Defendants under the ADA and Title VII without granting him an opportunity to amend.

### 2. Plaintiff's Claims Against the City Under Title VII and 42 U.S.C. § 1981

The City Defendants urge the Court dismiss *all* of Plaintiff's claims under Title VII and 42 U.S.C. § 1981[13] on the grounds that Plaintiff made no effort to plead specific facts establishing a prima facie case of discrimination under the McDonnell Douglas framework. However, based on the limited authority that the City Defendants rely on, the Court understands

---

[13] Section 1981 of Title 42 of the United States Code provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 only protects against *racial* discrimination. Arquello v. Conoco, Inc., 330 F.3d 355, 358 (5th Cir. 2003) (citations omitted); Garner v. Giarrusso, 571 F.2d 1330, 1340 (5th Cir. 1978) (Section 1981 protections limited to race or alienage). Title VII protects more broadly against employment discrimination on the basis of "race, color, religion, sex or national origin." 42 U.S.C. 2000e-2(a)(1). However, the same analysis applies in cases alleging disparate treatment or discriminatory discharge based on race, regardless of whether they are asserted under Section 1981 or Title VII. Riley v. Sch. Bd. Union Parish, 379 F. App'x 335, 340 (5th Cir. 2010).

21

their Title VII and Section 1981 arguments to extend only to Plaintiff's racial discrimination claim under these statutes and not to his retaliation claim.[14] Although the Court is not persuaded that *all* of Plaintiff's claims under Title VII and Section 1981 should be dismissed at this stage, the Court agrees with the City Defendants that Plaintiff has failed to state a plausible claim under Title VII or Section 1981 for *racial* discrimination.

The Court is not persuaded by the City Defendants' contention that Plaintiff's Title VII and Section 1981 discrimination claims should be dismissed for failure to plead specific facts establishing a prima facie case of discrimination under the <u>McDonnell Douglas</u> framework. A plaintiff is not

---

[14] In the portion of their memorandum devoted to Section 1981 and Title VII, the City Defendants rely exclusively on a single authority, <u>Bryan v. McKinsey & Co., Inc.</u>, 375 F.3d 358 (5th Cir. 2004), which involved a racial discrimination claim under Section 1981. They do not rely on any authorities involving retaliation claims under Section 1981 or Title VII. In addition, their argument is based on the prima facie elements for a disparate treatment or discriminatory discharge claim, not a retaliation claim. The prima facie elements of discrimination and retaliation claims are different. A plaintiff establishes a prima facie case of racial discrimination by showing: (1) he or she is a member of a protected class, (2) he or she was qualified for his or her position, (3) he or she was subject to an adverse employment action, and (4) he or she was replaced by someone outside of the protected class, in cases of discriminatory discharge, or, in cases of disparate treatment, that others similarly situated were treated more favorably. <u>Okoye v. The University of Texas Houston Health Ctr.</u>, 245 F.3d 507, 512–13 (5th Cir. 2005) (Title VII action claiming discriminatory discharge based on race); <u>Young v. City of Houston</u>, 906 F.2d 177, 179–80 (5th Cir. 1990) (Section 1981 and Title VII claims based on, *inter alia*, race discrimination). However, a plaintiff establishes a prima facie case of retaliation by showing that: (1) the plaintiff engaged in a protected activity under Title VII, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. <u>Ackel v. Nat'l Commc'ns, Inc.</u>, 339 F.3d 376, 385 (5th Cir. 2003) (citations omitted).

required to plead a prima facie case of employment discrimination under the McDonnell Douglas framework in order to survive a 12(b)(6) motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); Cooper v. United Parcel Serv., Inc., No. 08-1583, 2008 WL 4809153, at *2 (E.D. La. Nov. 3, 2008) (noting that rather than overruling Swierkiewicz in Twombly, the Supreme Court instead, "explicitly reaffirmed its holding in Swierkiewicz when it noted that the Court does 'not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'") "The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Swierkiewicz , 534 U.S. at 510. As the Supreme Court explained in Swierkiewicz, McDonnell Douglas does not apply in all employment cases — in particular, those where the plaintiff is able to discover and produce direct evidence of discrimination — and it thus "seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts that he may ultimately need to prove to succeed on the merits . . ." Id. at 511-12. In addition, as the Court observed, "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" Id. at 512 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)); See also McDonnell

23

<u>Douglas Corp. v. Green</u>, 411 U.S. 792, 802 n. 13 (1973) ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.") Furthermore, "before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." <u>Swierkiewicz</u>, 534 U.S. at 512. This particular difficulty is evident in this case, as Plaintiff uses the terms discrimination and retaliation interchangeably throughout his filings, and the prima facie elements of a retaliation claim under Title VII differs from the prima facie elements of a discrimination claim under Title VII or Section 1981.[15]

Nevertheless, even when considered under the proper standard, Plaintiff's allegations are insufficient to state a claim for racial discrimination under Section 1981 or Title VII. The elements of a racial discrimination claim are the same, whether the claim is asserted under Section 1981 or Title VII. <u>Riley</u>, 379 F. App'x at 339 (citing <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 316 (5th Cir. 2004)); <u>Lockett v. Wal-Mart Stores, Inc.</u>, 337 F. Supp. 2d 887, 891 (5th Cir. 2004). In order

---

[15] <u>See</u> <u>supra</u> n. 14.

to state a racial discrimination claim under either statute,
Plaintiff must allege that his employer required the fit for duty
exam or relieved him of his duties on the basis of his race,
detail the events leading to his termination, provide relevant
dates, and include the race of at least some of the relevant
persons involved in his termination. See Swierkiewicz, 534 U.S.
at 514 (finding that complaint in a Title VII case based on
national origin discrimination satisfied the requirements of Rule
8(a) where the Plaintiff alleged he had been terminated on the
basis of his national origin in violation of Title VII, detailed
the events leading to his termination, provided relevant dates,
and included the nationalities of some of the relevant persons
involved in his termination).

Here, Plaintiff has not alleged in any of his filings that
he was required to take the fit for duty exam or relieved of his
duties on the basis of his race.[16] Plaintiff has neither alleged
that he was replaced by a non-African American nor that he was
treated any differently than similarly situated non-African
American employees. Plaintiff has not mentioned the race of a
single person involved in the pertinent events, other than

---

[16] The Court notes that Plaintiff did articulate his subjective belief
that he was being discriminated against on the basis of his race in the Charge
of Discrimination that he filed with the EEOC. (Charge of Discrimination, Ex.
L. to Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12-1, p. 47)
However, Plaintiff has not alleged that he was discriminated against on the
basis of his race in his pleadings or subsequent filings in this lawsuit, and
thus, appears to have abandoned that contention in this lawsuit.

himself. In fact, this case is clearly distinguishable from
Swierkiewicz and bears a striking resemblance to McClinton v.
Sam's East, Inc., No. 11-2156, 2012 WL 4483492 (E.D. La. Sept.
28, 2012). In McClinton, the court granted the defendants' Rule
12(b)(6) motion and dismissed a *pro se* litigant's claims for
racial discrimination under Section 1981, explaining that:

> Nowhere in this section of his complaint does
> [plaintiff] allege facts that plausibly suggest that he
> was passed over for a job opportunity based on his
> race. Rather, [plaintiff] alleges that he was passed
> over because of his gender. The race of the woman who
> actually obtained the job he was seeking is not even
> mentioned.

Id.

Thus, to the extent that Plaintiff purports to assert claims
under Section 1981 or Title VII for disparate treatment or
discriminatory discharge on the basis of race, the Court finds
that they are not plausible. Moreover, after having reviewed the
entire record, the Court finds that Plaintiff has failed to
indicate what material facts he would include in an amended
complaint. Thus, the Court will dismiss Plaintiff's racial
discrimination claims under Section 1981 and Title VII without
granting him an opportunity to amend his complaint.

However, the main thrust of Plaintiff's complaint is not
that the City discriminated against him on the basis of his race,
but that the City retaliated against him for filing a previous

26

charge of discrimination and civil lawsuit by requiring him to take a fitness for duty evaluation and relieving him of his duties with the Slidell Police Department. The caption of Plaintiff's Complaint is entitled "Complaint for Damages-*Retaliation* in Violation of the Civil Rights Act of 1964. 42 U.S.C. 2000E, 42 U.S.C. 1981 . . ." (Compl., Rec. Doc. 1, p. 1) (emphasis added). Plaintiff affirmatively alleges that the Defendants "intentional took action to violate the Plaintiffs rights in retaliation from the Plaintiff Troy R Franklin filing a discrimination complaint, civil lawsuit and for personal gain" and lists Chief Smith among the seven named Defendants. (Compl., Rec. Doc. 1, p. 2) Plaintiff also states that "Chief Randy Smith relieve the Plaintiff of all duties and responsibilities with the Slidell Police . . ." (Compl., Rec. Doc. 1, pp. 1-3)

42 U.S.C. 2003-3(a) establishes a claim for retaliation against an employee who files a charge of discrimination with the EEOC and provides in pertinent part:

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings: It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. 2000e-3(a).

When the Court assumes that Plaintiff's allegations are true, construes them in the light most favorable to Plaintiff, and draws all reasonable inferences in Plaintiff's favor, as it must, the Court finds that Plaintiff has alleged that Chief Smith relieved him of his duties because he filed an EEOC charge — conduct which is actionable under Title VII. <u>Ackel</u>, 339 F.3d at 385. Moreover, given that the City Defendants' brief argument did not extend to Plaintiff's Title VII retaliation claim, the Court finds that dismissal of Plaintiff's Title VII retaliation claim is not warranted at this stage.

### 3. Plaintiff's Claims Against the City Under the ADA

#### a. Disability Discrimination

To prevail on an ADA discrimination claim, a plaintiff must ultimately prove that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodations; and (3) he has suffered from an adverse employment action because of his disability. <u>Kemp v. Holder</u>, 610 F.3d 231, 235 (5th Cir. 2010); <u>Washburn v. Harvey</u>, 504 F.3d 505, 508-09 (5th Cir. 2007)). To satisfy the causation standard, the "'discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome.'"

28

Pinkerton v. Spellings, 529 F.3d 513, 519 (5th Cir. 2008)
(quoting Soledad v. U.S. Dep't of Treasury, 304 F.3d 500, 503-04
(5th Cir. 2002)). The City Defendants argue that Plaintiff has
not alleged that he was a qualified individual with a disability
and has not alleged any facts to show that he had a disability as
defined by Section 12102(1) of the ADA.

Congress amended the ADA with the ADA Amendments Act of 2008
("ADAAA"), which was enacted on September 28, 2008 and became
effective on January 1, 2009. Culotta v. Sodexo Remote Sites
P'ship, 864 F. Supp. 2d 466, 474 n. 15 (E.D. La. 2012) (citations
omitted). As a threshold matter, because Plaintiff's allegations
involve conduct by his employer that occurred after the effective
date of the ADAAA, we must determine whether Plaintiff has
alleged that he was disabled under the ADA, as amended by the
ADAAA. See Hale v. King, 642 F.3d 492, 498 (5th Cir. 2011)
("Because [plaintiff's] allegations involved conduct occurring
prior to the effective date of the ADAAA, we must determine
whether [plaintiff] was disabled under the ADA prior to its
amendment."). The ADA defines a "disability" as "(A) a physical
or mental impairment that substantially limits one or more major
life activities of such individual; (B) a record of such
impairment; or (C) being regarded as having such an impairment."
42 U.S.C. § 12102(1). "An individual may establish coverage under

any one or more of these three prongs of the definition of disability . . . " 29 C.F.R. § 1630.2(g)(2). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv); See also Sutton, 527 U.S. at 483, superseded by statute on other grounds, ADAA, Publ. L. No. 110-325, 122 Stat. 3553; 42 U.S.C. § 12102. Under the ADA regulations, a "physical or mental impairment" includes, *inter alia*, "[a]*ny mental or psychological disorder, such as an . . . emotional or mental illness* . . ." 29 C.F.R. § 1630.2(h) (emphasis added). "'Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity.'" Culotta, 864 F. Supp. 2d at 474 (citations omitted). "A major life activity . . . *includes the operation of a major bodily function, including* but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, *brain*, respiratory, circulatory, endocrine, and reproductive *functions*." 42 U.S.C. § 12102(2)(B) (emphasis added). The regulations further indicate that "[i]n determining other examples of major life activities, the term 'major' shall not be interpreted strictly to create a demanding standard for disability." 29 C.F.R. § 1630.2(i)(2).

Prior to January 1, 2009, under <u>Sutton v. United Airlines, Inc.</u>[17] and <u>Murphy v. United Parcel Serv., Inc.</u>,[18] when determining whether an individual was "substantially limited" in a major life activity and thus "disabled" within the meaning of the ADA, courts were to take into account the positive and negative effects of measures or devices taken to mitigate a physical or mental impairment. <u>Kemp</u>, 610 F.3d at 236. In addition, under <u>Toyota Motor Manufacturing, Kentucky Inc. v. Williams</u>,[19] the Court held that "substantially limited," meant that an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. 534 U.S. at 198. In the ADAAA, Congress overruled <u>Sutton</u> and amended the ADA to mandate that courts determine whether an impairment substantially limits a major life activity without taking into account the effects of mitigating measures or devices. <u>Kemp</u>, 610 F.3d at 236 (citations omitted). Congress also overruled the Court's holding in <u>Williams</u> "that to be substantially limited in performing a major life activity under the ADA, 'an individual must have an impairment that prevents or severely restricts the individual from doing

---

[17] 527 U.S. 471, 482 (1999).

[18] 527 U.S. 516, 521 (1999).

[19] 534 U.S. 184 (2002).

31

activities that are of central importance to most people's daily lives,'" explaining that it created an "inappropriately high level of limitation necessary to obtain coverage under the ADA." ADAAA, §§ 2(b)(4)-(b)(5). Congress also stated that the term "substantially limits" is not meant to be a demanding standard and should be broadly construed in favor of expansive coverage. Id. § 2(b)(4); 29 C.F.R. § 1630.2(j)(1)(i). The EEOC regulations interpreting the ADA provide that:

> [a]n impairment is a disability within the meaning of this section if it *substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.* Nonetheless, not every impairment will constitute a disability within the meaning of this section.

Id. § 1630.2(j)(1)(ii) (emphasis added).

Congress has indicated that "substantially limits," is to be interpreted and applied to require a lower degree of functional limitation than courts required prior to the ADAAA under Williams. ADA §§ 2(a)(7), 2(b)(4)-(5); See also 29 C.F.R. § 1630.2(j)(1)(iv). Moreover, the threshold questions of "whether an individual's impairment is a disability under the ADA," and "whether an impairment 'substantially limits' a major life activity," should not require extensive analysis. ADAAA, § 2(b)(5); 29 C.F.R. § 1630.2(j)(1)(iii). The EEOC regulations

recognize that:

> Applying the principles set forth in paragraphs (j)(1)(I) through (ix) of this section, *the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under paragraphs (g)(1)(I) (the 'actual disability' prong)* or (g)(1)(ii) (the 'record of' prong) of this section. *Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward.*

29 C.F.R. § 1630.2(j)(3)(ii).

> [A]pplying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, *it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated*: Deafness substantially limits hearing . . . *post-traumatic stress disorder*, obsessive compulsive disorder, and schizophrenia *substantially limit brain function*.

Id. § 1630.2(j)(3)(iii) (emphasis added).

Although "the Supreme Court has not decided what deference, if any, is due to implementing regulations issued by the EEOC, it has relied on these regulations in analyzing cases, particularly when neither party to a case challenges their reasonableness." E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 614 n. 4 (5th Cir. 2009). Because (a) neither party has challenged the reasonableness of the EEOC implementing regulations and (b) the Court finds that they are instructive, the Court will rely on the

33

these regulations. As a result, the Court finds that Plaintiff has adequately alleged that he has a "disability," under 12102(A) — the "actual disability" prong of the ADA. Plaintiff alleges that after he received a death threat from his supervisor, he was informed that might be suffering from "Post Traumatic Syndrome," which the Court liberally construes as a reference to post-traumatic stress disorder. Considering that Congress has clearly indicated that the threshold question of whether an individual's impairment constitutes a disability should not demand extensive analysis, and that the EEOC regulations interpreting the ADA indicate that post-traumatic stress disorder is an impairment that should easily be concluded to substantially limit brain function, the Court finds that Plaintiff has adequately pleaded that he is disabled within the meaning of the ADA.[20] Thus, the Court declines to dismiss Plaintiff's claim against the City Defendants under Section 12112(a) on that basis.

### b. Disclosure of Confidential Medical Information

The City Defendants argue that Plaintiff's ADA claim under 42 U.S.C. § 12112(d), arising from the alleged disclosure of confidential medical information should be dismissed. The Court agrees. A plaintiff asserting a claim against his employer under the ADA must exhaust his administrative remedies before filing

suit against his employer in federal court. Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996). "The ADA incorporates by reference the procedures for exhaustion applicable to claims under Title VII." Williamson v. American Nat. Ins. Co., 695 F. Supp. 2d 431, 444 (S.D. Tex. 2010) (citing Wesley v. Dallas ISD, No. 03-08-CV-2025-K, 2009 WL 193786, *2 (N.D. Tex. Jan. 27, 2009)). In the Title VII context, this Court has recognized that the liberal standard for construing EEOC charges must be balanced against the fact that Title VII contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance. Huda v. Lockheed Martin, No. 07-9090, 2008 WL 191300, at *2 (E.D. La. Jan. 22, 2008) (citing Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006)). Consequently, the Court finds that the scope of its inquiry in an ADA action, like in a Title VII action, should be limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Young v. City of Houston, 906 F.2d 177, 179 n. 1 (5th Cir. 1990); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970); Huda, 2008 WL 191300, at *2 (citing Pacheco, 448 F.3d at 789). "[A] judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the

charge and growing out of such allegation *during the pendency of the case before the Commission*.'" <u>National Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio, Tex.</u>, 40 F.3d 698, 711 (5th Cir. 1994).

Plaintiff's Charge of Discrimination was limited to complaints about Chief Smith requiring him to take a physical and relieving him of his duties, because he failed part of that physical. Plaintiff did not mention any allegedly improper disclosure of medical information by either Foltz, McLellan, or Johnson in his Charge of Discrimination. There is no evidence that Plaintiff brought this grievance to the EEOC at any point during the investigation of his original charge, and there appears to be no reason to infer that the EEOC's investigation of Plaintiff's psychological fitness for duty examination with Dr. Klein would have encompassed Plaintiff's allegations that Foltz and McLellan disclosed medical information to Chief Smith or that Johnson disclosed medical information to Dr. Klein. <u>Compare</u>, <u>Huda</u>, 2008 WL 191300, at *3 (finding that reasonable investigation would have reached a failure to promote claim based on evidence that Plaintiff submitted a rebuttal letter to the EEOC stating that he had several documented meetings with executives regarding discrimination in promotion and that he was twice denied supervisor positions despite being the most

36

qualified candidate). Moreover, in the Title VII context, "'[d]iscrimination and retaliation claims are distinct, so alleging one and not the other in an EEO charge does not exhaust a plaintiff's remedies as to the one not included." Lopez v. Kempthorne, 684 F. Supp. 2d 827, 852 (S.D. Tex. 2010) (citing Bouvier v. Northrup Grumman Ship Sys., Inc., 350 F. App'x 919, 921-22 (5th Cir. 2009)). Similarly, the Court finds that in the ADA context, a claim that an employer unlawfully required a medical examination and a claim that an employer unlawfully disclosed confidential medical information are distinct. Thus, the EEOC investigation that resulted from Plaintiff's original Charge of Discrimination could not reasonably have been expected to extend to the alleged disclosures of medical information by Foltz, McLellan, and Johnson. Consequently, the Court finds that Plaintiff has failed to exhaust his administrative remedies with respect to his ADA claim for disclosure of confidential medical information.

Moreover, even if Plaintiff had exhausted his administrative remedies, his complaint still fails to state a claim under 42 U.S.C. § 12112(d). The City Defendants argue, relying on Dean v. City of New Orleans, No. 11-2209, 2012 WL 2564954 (E.D. La. July 2, 2012) and McPherson v. O'Reilly Auto., Inc., 491 F.3d 726 , 732 (8th Cir. 2007), that in order to state a claim under Section

12112(d) of the ADA for release of confidential medical information, a Plaintiff must allege facts showing: (1) that the information that was disclosed was "confidential" as defined in Section 12112(d), (2) that any medical information released was obtained through an entrance exam or disability-related inquiry, and (3) that he suffered a tangible injury as a result of the disclosure of the confidential medical information. The City Defendants contend that Plaintiff's allegation that Johnson, the City's Civil Service Personnel Director, disclosed medical information to Dr. Klein is insufficient, because Plaintiff has failed to specify what medical information was provided and how he was damaged by the disclosure. The Court agrees.

42 U.S.C. § 12112(d)(4)(A) governs "medical examinations and inquiries." Under Section 12112(d), an employer is expressly permitted to require a medical examination and to make inquiries of an employee as to whether that employee is an individual with a disability or as to the nature or severity of the disability, if the examination or inquiry is shown to be job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A); See also 29 C.F.R. § 1630.14(c) ("A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform

38

job-related functions.") In addition, an employer is permitted to conduct voluntary medical examinations that are part of an employee health program and to make inquiries into the ability of an employee to perform job-related functions. Id. § 12112(d)(4)(B). However, the employer is required to treat any information regarding the medical condition or history of an employee that the employer obtains from a medical examination or inquiry authorized under Section 12112(d) as a confidential medical record, subject to certain limited exceptions. E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1047 (10th Cir. 2011) (citing 42 U.S.C. §§ 12112(d)(4)( C), (d)(3)(B); 29 C.F.R. § 1630.14). A plaintiff cannot succeed on a claim under Section 12112(d) unless the employer obtained the medical information that was disclosed through an entrance exam or disability-related inquiry. Dean, 2012 WL 2564954, at *20 (citing C.R. England, Inc., 644 F.3d at 1047; Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000); Montano v. INOVA Health Care Servs., No. 1:08cv565, 2008 WL 4905982, at *7 (E.D. Va. Nov. 12, 2008); Pouliot v. Town of Fairfield, 226 F. Supp. 2d 233, 246 (D. Me. 2002); E.E.O.C. v. Overnite Transp. Co., No. 7:01CV00076, 2001 WL 1521584, at *2 (W.D. Va. Nov. 30, 2001)). A plaintiff must also allege that he suffered a tangible injury due to the disclosure of the protected medical information. Dean, 2012 WL 2564954, at *21 (citations

39

omitted).

Thus, to state a claim under Section 12112(d), Plaintiff must allege facts showing: (1) that Johnson obtained the medical information that she allegedly disclosed to Dr. Klein through an entrance examination or a disability-related inquiry, and (2) that Plaintiff suffered a tangible injury as a result of her disclosure. Id. Plaintiff merely alleges that Johnson "provided medical information" to Dr. Klein, without alleging any facts indicating that Johnson obtained the medical information in question from an entrance exam or disability-related inquiry. Moreover, nothing in Plaintiff's complaint suggests that Chief Smith's decision to relieve him of his duties with the Slidell Police Department, or any other tangible injury, was based on Johnson's alleged disclosure. Rather, the temporal proximity between Dr. Klein's letter indicating that Plaintiff was unfit for duty and Chief Smith's letter indicating that he was relieving Plaintiff of his duties with the Slidell Police Department suggests that Chief Smith's decision was based on Dr. Klein's opinion. Thus, the Court finds that Plaintiff has failed to state a claim for disclosure of confidential medical information against the City under 42 U.S.C. § 12112(d).[21]

---

[21] Although the City Defendants neglected to address the Plaintiff's allegations that Rockwell McLellan and Kevin Foltz, two City employees, "gave medical information to the Chief Elect to lead him to believe the Plaintiff was unfit for duty," these allegations are insufficient for the same reasons

Moreover, the Court finds that Plaintiff has pled his best case against the City with respect to this claim, and will thus dismiss this claim without granting Plaintiff an opportunity to amend.

### c. Medical and Psychological Fitness for Duty Examinations

Section 12112(d)(4)(A) of the ADA provides that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Id. § 12112(d)(4)(A). "Relatively few courts have addressed either [Section 12112(d)(4)(A)] or the related subsections involving preemployment inquiries and employment entrance examinations." Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 94 (2d Cir. 2003). Generally, "Section 12112(d)(4)(A) prohibits employers from using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry.'" Brownfield v. City of Yakima, 612 F.3d 1140, 1140 (9th Cir. 2011) (citing EEOC v. Prevo's Family Mkt.,

---

as Plaintiff's allegations against Johnson.

<u>Inc.</u>, 135 F.3d 1089, 1094 n. 8 (6th Cir. 1998)). Section
12112(d)(4)(A) does not forbid all medical inquiries, but only
those "as to whether such employee is an individual with a
disability or as to the nature or severity of the disability."
<u>Conroy</u>, 333 F.3d at 95; <u>Yin v. State of Cal.</u>, 95 F.3d 864, 868
(9th Cir. 1996). A medical or psychological fitness for duty
examination triggers Section 12112(d)(4)(A) if a goal of the
proposed examination is to determine whether the employee is an
individual with a disability or to determine the nature or
severity of the disability. See <u>Yin</u>, 95 F.3d at 868. In addition,
a medical or psychological fitness for duty examination may also
trigger the protections of the ADA if the examination would tend
to or is likely to reveal an employee's disability. See <u>Conroy</u>,
333 F.3d at 95-96 (employer's policy of requiring employees to
provide a medical certification, including a "general diagnosis"
after an absence from work triggered Section 12112(d)(4)(A),
because it could tend to reveal a disability and expose
individuals with disabilities to employer stereotypes, thereby
implicating the concerns expressed in Section 12112(d)(4)).

Although the general prohibition in Section 12112(d)(4)(A)
is subject to an exception, "the business necessity standard 'is
quite high, and is not to be confused with mere expediency.'"
<u>Brownfield</u>, 612 F.3d at 1146. "[A]n examination that is 'job

related' and 'consistent with business necessity' must, at minimum, be limited to an evaluation of the employee's condition only to the extent necessary under the circumstances to establish the employee's fitness for the work at issue." Tice v. Centre Area Transp. Auth., 247 F.3d 506, 515 (3d Cir. 2001); Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 811-12 (6th Cir. 1999). "When health problems have had a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work." Yin, 95 F.3d at 868; See also Sullivan, 197 F.3d at 811. Moreover, several circuit courts have indicated that:

> the business necessity standard may be met *before an employee's work performance declines* if the employer is faced with 'significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job. An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can perform job-related functions.'

Brownfield, 612 F.3d at 1146 (citing Sullivan, 197 F.3d at 811; Conroy, 333 F.3d at 98) (emphasis added).

As a preliminary matter, the Court notes that it is unclear from the City Defendants' memorandum in support of their motion to dismiss whether they are arguing that Plaintiff's ADA claim stemming from the fitness for duty examination should be

dismissed as premature on the grounds that Plaintiff failed to exhaust his administrative remedies. At one point, the City Defendants request that Plaintiffs' claims "except those regarding [Plaintiff]'s being required to take a *fit for duty exam* and being allowed to return to work," be dismissed as premature because Plaintiff's EEOC Charge of Discrimination was shorter than his complaint and limited to complaints that he was required to undergo a fit for duty exam and then told that he could not return to work due to the results of that exam. (Mem. in Supp. of City Def.'s Mot. to Dismiss, Rec. Doc. 10-1, p. 8) However, a few sentences later, Defendants appear to request that "all claims regarding violation of the ADA, due to . . . requiring the Plaintiff to undergo a *medical and psychological exam*, should be dismissed." (Mem. in Supp. of City Def.'s Mot. to Dismiss, Rec. Doc. 10-1, p. 8)

Although it appears to the Court that the City Defendants may be attempting to draw a distinction between an ADA claim stemming from being required to take a fit for duty exam and an ADA claim stemming from being required to take a medical or psychological exam, the Court finds that the distinction is threadbare. Having reviewed Plaintiff's Complaint, as amended, and his EEOC Charge of Discrimination, the Court finds it obvious that Plaintiff's alternating references to being required to take

44

a "physical," "fit for duty exam," and "medical and
psychological," are all references to the same event — being
required by his employer to take a psychological fitness for duty
evaluation with Dr. Klein. (Compl., Rec. Doc. 1; Pl.'s Opp. to
City Def.'s Mot. to Dismiss, Rec. Doc. 12; Charge of
Discrimination, Ex. L to Pl.'s Opp. to City Def.'s Mot. to
Dismiss, Rec. Doc. 12-1, p. 47) Plaintiff did not specifically
use the term "fit for duty exam" in his Charge of Discrimination.
He actually complained that he was: (1) being required to take a
"physical," (2) being relieved of duty after (a) Chief Smith
informed him that he was "psychotic, delusional, and paranoid,"
and (b) Dr. Klein opined that he not fit for duty in a law
enforcement agency in any capacity. (Charge of Discrimination,
Ex. L to Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12-
1, p. 47) Plaintiff's explicit references in his EEOC Charge of
Discrimination to being required to take a "physical," to Dr.
Klein's credentials as a doctor of philosophy rather than a
medical doctor, and to being told that he couldn't return to work
because he was "psychotic, delusional, and paranoid," lead the
Court to conclude that Plaintiff has exhausted his administrative
remedies with respect to his ADA claims stemming from being
required by his employer to take a psychological exam and/or
fitness for duty exam. Plaintiff's Charge of Discrimination was

45

sufficient to put the City on notice that Plaintiff's grievance was being required to take a psychological evaluation. In addition, the EEOC's investigation of Plaintiff's Charge of Discrimination would have encompassed that claim. Thus, the Court rejects the City Defendants' possible argument that Plaintiff's ADA claim stemming from being required by his employer to undergo a medical and psychological evaluation should be dismissed for failure to exhaust his administrative remedies. Having dispensed with this preliminary matter, the Court will address the City Defendants' other arguments relative to the fitness for duty examinations.

First, City Defendants argue that Plaintiff's claim under Section 12112(d)(4)(A) should be dismissed, because he failed to plead that he was a qualified individual with a disability. Second, the City Defendants contend that Plaintiff's allegation that he was required to take a fitness for duty exam before returning to work from sick leave does not establish an ADA violation, because simply being required to take a fitness for duty exam is not an ADA violation. Third, they argue that courts have specifically recognized the business necessity exception in the context of police departments, because they place armed officers in positions where they can do tremendous harm if they act irrationally. Relying on <u>Brownfield v. City of Yakima</u>, <u>Watson</u>

46

v. City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999), and

Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 599

(8th Cir. 1998), they assert that the ADA does not require a

police department to forego a fitness for duty examination to

wait until a perceived threat becomes real or questionable

behavior results in injuries. They further assert, relying on

Conroy v. N.Y. State Department of Correctional Services, 333

F.3d 88, 98 (2d Cir. 2003), that an employer is permitted to

require a medical examination when it "can identify legitimate,

non-discriminatory reasons to doubt the employee's capacity to

perform his or her duties." According to the City Defendants,

because Franklin was a senior corrections officer for the Slidell

Police Department, it was necessary and permissible for the City

to require Plaintiff to submit to a fit for duty examination

before allowing him to return to active duty, in order to ensure

that he could do so safely.

First, the Court rejects the City Defendants' argument that

Plaintiff's claim under Section 12112(d)(4)(A) should be

dismissed on the grounds that Plaintiff failed to plead that he

was a "qualified individual with a disability" within the meaning

of Section 12112(a). The Fifth Circuit has not decided whether a

non-disabled individual may sue under Section 12112(d),[22] and
there is a split of authority on the issue. Although some courts
have concluded that an individual must be a "qualified individual
with a disability" within the meaning of Section 12112(a) in
order to sue under Section 12112(d),[23] the greater weight of
authority has reached the opposite conclusion.[24] Thus, for the
reasons articulated by the Eighth, Ninth, and Tenth Circuits, the

---

[22] Fuzy v. S&B Eng'rs & Constr., Ltd., 332 F.3d 301, 303 (5th Cir. 2003)
(reserving judgment on the question of whether a non-disabled person may bring
suit under Section 12112(d)); Armstrong v. Turner Indus., Inc., 141 F.3d 554
(5th Cir. 1998) (declining to decide whether the ADA provides a private right
of action for non-disabled job applicants who are subjected to preemployment
medical examinations and inquiries in violation of section 12112(d)(2)(a)).

[23] E.g., Bone v. City of Louisville, No. 99-5813, 2000 WL 761870, at *3
(6th Cir. May 30, 2000) (unpublished); Armstrong v. Turner Indus., Ltd., 950
F. Supp. 162, 167 (M.D. La. 1996) ("Considering the placement and purpose of
the ADA restrictions on medical inquiries of job applicants found in 12112(d)
in the context of the entire statute, the most reasonable interpretation is
that if a separate claim can be brought for violation of this section, it must
be brought by a qualified individual with a disability as that term is defined
by the ADA."); Varnagis v. City of Chicago, No. 96-6304, 1997 WL 361150, at *7
(N.D. Ill. June 20, 1997) ("we also conclude that plaintiffs may not maintain
an action for violations of 12112(d) unless they have a "disability" within
the meaning of the ADA."). The Varnagis court suggested that the reference in
12112(d)(1) to subsection 12112(a), which prohibits discrimination against "a
qualified individual with a disability," supports the position that the
protections 12112(d) also apply only to qualified individuals with a
disability. Varnagis, 1997 WL 361150, at *6. It also argued that Congress
enacted the ADA "to provide a clear and comprehensive national mandate for the
elimination of discrimination against individuals with disabilities," and that
there is "no indication that Congress intended the protections of the ADA to
extend to individuals without a disability as defined by the statute." Id. at
*7.

[24] Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1229
(10th Cir. 1997) ([P]laintiff's ability to maintain [an ADA claim under
Section 12112(d)(4)(a)] does not require her to prove that she is an
individual with a disability") (alterations added); Griffin v. Steeltek, Inc.,
160 F.3d 591, 595 (10th Cir. 1998) ("A job applicant need not make a showing
that he or she is disabled or perceived as having a disability to state a
prima facie case under 42 U.S.C. § 12112(d)(2)); Cossette v. Minn. Power &
Light, 188 F.3d 964, 969 (8th Cir. 1999); Fredenburg v. Contra Costa Cty.
Dept. of Health Serv., 172 F.3d 1176, 1181-82 (9th Cir. 1999); Karraker v.
Rent-A-Ctr., Inc., 239 F. Supp. 2d 828, 836 (C.D. Ill. 2003).

Court finds that Plaintiff can maintain his claim under Section 12112(d)(4)(A), regardless of whether he has pleaded that he is a "qualified individual with a disability," within the meaning of Section 12112(a).

Second, the City Defendants do not cite any authorities stating as a categorical matter that requiring an employee to undergo a fitness for duty examination, in itself, does or does not constitute an ADA violation under Section 12112(d)(4)(A). For purposes of this 12(b)(6) motion to dismiss, the Court finds that Plaintiff's allegation that his employer required him to take a medical and psychological fitness for duty examination before returning to work from sick leave is alone sufficient to trigger the protections of Section 12112(d). Although it appears that the Fifth Circuit has not construed Section 12112(d)(4)(A) of the ADA in general or the scope of its business necessity exception in particular,[25] the authorities that have construed this section of

---

[25] In an unreported decision, <u>Crews v. Dow Chemical Co.</u>, 287 F. App'x 410 (5th Cir. 2008), a plaintiff, who, as resource leader, was responsible for determining which employees should staff a project, reviewing employees, setting salary recommendations, and directing assignments, alleged that her employer discriminated against her by restricting her access to the work premises and e-mail and cancelling her transfer to a position in Europe pending the completion of a fitness for duty assessment. <u>Id.</u> at 410-11. Conducting its analysis under 42 U.S.C. § 12112(a), not 42 U.S.C. §12112(d)(4)(A), the specific ADA provision at issue in this case, the Fifth Circuit affirmed the grant of summary judgment in favor of the plaintiff's employer, reasoning that even if the plaintiff had met her *prima facie* case under the <u>McDonnell Douglas</u> burden-shifting framework, her employer had articulated a legitimate, non-discriminatory rationale for requiring the plaintiff to undergo the fitness for duty assessment, specifically, changes in her workplace behavior, including, among other things, hand tremors, slurred speech, decreased engagement at meetings, inability to make arguments

the ADA indicate that whether a given medical or psychological fitness for duty examination is prohibited under Section 12112(d)(4)(a) depends upon the employer's motive in requiring the fitness for duty examination, and whether the fitness for duty examination tends or is likely to disclose that the employee is disabled. See Yin, 95 F.3d at 868; Conroy, 333 F.3d at 95-96. Most employees are not mind readers who can discern whether an employer who required them to submit to a medical or psychological fitness for duty examination acted (a) with an impermissible motive of determining the existence, nature, or severity of a disability, or (b) with the permissible motive of determining whether he was capable of performing the duties of his particular position. Moreover, Plaintiff's allegations that: (1) he was attempting to return from sick leave; (2) he had been authorized by the previous Chief of Police to return on administrative duties only; and (3) Chief Smith required the fitness for duty examinations without giving a reason or without giving a valid reason could just as easily lead a reasonable person to infer that Chief Smith's motive in requiring Plaintiff to submit to the physical and psychological fitness for duty

_____

concerning topics she was very knowledgeable about, discussing improper topics during work-related meetings. Id. at 412. The Court concluded that the plaintiff's employer reasonably could have found that such changes might impair the plaintiff's performance as a resource leader, and that based on the summary judgment record, the plaintiff had not established that the employer's rationale was pretextual. Id.

examinations was to determine the existence, nature, or severity of a disability, as to determine whether Plaintiff was fit for duty as a senior corrections peace officer. Thus, viewing those allegations in the light most favorable to Plaintiff, as it must at this stage, the Court finds that they trigger Section 12112(d).

In addition, whether a medical or psychological fitness for duty examination triggers Section 12112(d) because it tends to disclose or is likely to disclose the existence, nature, or severity of a disability is a fact-intensive inquiry that depends on the specific manner in which the examination was conducted and the nature of the information conveyed by individual conducting the fitness for duty examination to the employer. See Conroy, 333 F.3d at 95-96. A plaintiff may not know at the pleading stage whether the examiner (a) informed his employer that he was simply not fit for particular duties associated with the job in question, in which case Section 12112(d)(4)(a) would not appear to be implicated, or (b) informed his employer of his diagnosis, in which case Section 12112(d)(4)(a) would appear to be implicated. Although a plaintiff would presumably have some information about the questions the examiner asked, the types of tests the examiner ran, and the general manner in which the examiner conducted the evaluation, requiring a plaintiff to

provide that degree of detail at the pleading stage would tend to undercut Rule 8's requirement that the Plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, the City Defendants do not appear to seriously dispute that Plaintiff's allegation that he was required to take a fitness for duty examination triggers the protections of Section 12112(d)(4)(A). Instead, they contend that they are entitled to a dismissal of Plaintiff's claim under Section 12112(d)(A) on account of the business necessity exception.

The employer bears the burden of demonstrating business necessity. Brownfield, 612 F.3d at 1146 (citing Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); Conroy, 333 F.3d at 97). "Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears *clearly* on the face of the pleadings." Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986) (citing Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)) (emphasis added). A particular ground for opposing a claim may be the basis for dismissal for failure to state a claim when the allegations in the complaint suffice to establish that ground. EPCO Carbon

<u>Dioxide Prods., Inc. v. J.P. Morgan Chase Bank, N.A.</u>, 467 F.3d 466, 470 (5th Cir. 2006). Thus, the major issue with regard to Plaintiff's ADA claim under Section 12112(d)(4)(A) is whether the allegations in Plaintiff's complaint suffice to clearly establish the applicability of the business necessity exception in this case.

The authorities that the City Defendants rely on offer no support for their position. They are all procedurally distinguishable because they all involved summary judgment motions, not motions to dismiss. <u>See</u> <u>Brownfield</u>, 612 F.3d at 1142; <u>Watson</u>, 177 F.3d at 934; <u>Cody</u>, 139 F.3d at 596. They are also all factually distinguishable. In <u>Brownfield</u>, the Ninth Circuit concluded that an employer's decision to place a police officer whose job performance was otherwise satisfactory on administrative leave and to order him to undergo a fitness for duty examination *after* the occurrence of four alarming incidents was justified by the business necessity exception.[26] Similarly, in <u>Watson</u>, the Eleventh Circuit upheld an employer's decision to

_____

[26] The four incidents that led the employer to refer the plaintiff for a fitness for duty evaluation in <u>Brownfield</u> included: (a) a disruptive argument with another officer on the job, (b) a report from plaintiff that he nearly lost control after a young child began taunting him during a traffic stop, (c) a domestic violence call from the plaintiff's estranged wife, during which she reported that the plaintiff struck her by slamming the door as she backed out of a doorway during a visit with their children, and (d) a report from another officer that the officer had made several alarming statements, such as "It's not important anyway," "I'm not sure if it's worth it," and "It doesn't matter how this ends." <u>Brownfield</u>, 612 F.3d at 1143.

require a police officer, whose job performance was otherwise satisfactory, to undergo a fitness for duty examination after he displayed "unusually defensive and antagonistic behavior towards his co-workers and supervisors." 177 F.3d at 934. The Eleventh Circuit also enunciated a blanket rule that "[i]n any case where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is a job-related and consistent with business necessity." Id. at 935. Here, there is no indication on the face of Plaintiff's complaint that Chief Smith was acting pursuant to the type of "perceived threat" at issue in Brownfield and Watson, because Plaintiff's complaint does not indicate that he exhibited any alarming, defensive, hostile, or antagonistic behavior toward anyone before Chief Smith required him to submit to the medical and psychological fitness for duty examinations. Cody is also inapplicable. In that case, the Court did not construe Section 12112(d) generally or the business necessity exception in particular. See Cody, 139 F.3d at 596-99. Instead, in Cody, the Eight Circuit considered whether an employer's request for a mental evaluation, among other things, established that the employer regarded the employee as disabled within the meaning of Section 12102(2)(C) of the ADA. See id. at 598-99.

Moreover, Plaintiff's allegations that he was a senior corrections peace officer returning from sick leave when Chief Smith required the fitness for duty examination are insufficient to establish the applicability of the business necessity exception in this case. As a general proposition, the Court agrees with the City Defendants' contention that a medical fitness for duty examination is permissible when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties. See Conroy, 333 F.3d at 98; See also Watson, 177 F.3d at 935. However, it is not clear to the Court at this stage, from the face of Plaintiff's complaint, that a legitimate, non-discriminatory reason to doubt Plaintiff's capacity to perform his duties existed at the time that Chief Smith required the fitness for duty examination. Courts have established a high standard to satisfy the business necessity exception to guard against employers "using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry.'" Brownfield, 612 F.3d at 1146 (citations omitted). In line with this high standard, Court have found that the business necessity exception applies at summary judgment if the employer shows that before it required the fitness for duty examination, "health

55

problems . . . had a substantial and injurious impact on an employee's job performance," _Yin_, 95 F.3d at 868, or it "reasonably perceiv[ed] an officer to be even mildly paranoid, hostile, or oppositional." _Watson_, 177 F.3d at 935. While this is not an exhaustive list of circumstances where the business necessity exception could apply, the Court finds, contrary to the City Defendants' contentions, that the fact that an employee was a police officer returning to work from sick leave does not _alone_ constitute a legitimate reason to require a fitness for duty examination. Under that rationale, an employer could lawfully require a police officer returning to active duty from sick leave _of any duration for any illness_ to submit to medical and psychological fitness for duty examinations. Such a rule — even with regard to police officers — would easily lend itself to the kind of employer abuse of medical and psychological examinations that Section 12112(d) of the ADA aims to prevent. In this case, Plaintiff's allegation that he was attempting to return to work from sick leave at the time Chief Smith required the fitness for duty examination suggests that a health problem was having _some degree of negative impact_ on his job performance. However, given that Plaintiff's complaint is silent with respect to the duration of his prior sick leave and the duties associated with his employment as a senior corrections peace officer, it is not clear

56

to the Court, *at this stage*, that at the time Chief Smith and Johnson required Plaintiff to submit to a fitness for duty examination, Plaintiff's health problems were having such a "substantial and injurious," impact on his job performance that the fitness for duty examinations were justified by the business necessity exception. Thus, while it remains possible that the business necessity exception may ultimately apply in this case, the Court declines, at this stage, to dismiss Plaintiff's ADA claim under Section 12112(d)(4)(A) on account of the business necessity exception.

### 4. Plaintiff's Claims for Punitive Damages

The City Defendants argue that Plaintiff cannot recover punitive damages from the City, a municipality, under 42 U.S.C. § 1981a(b)(1). The Court agrees. 42 U.S.C. § 1981a, or the Civil Rights Act of 1991, a 1991 amendment to the remedial scheme applicable to both Title VII and the ADA,[27] provides in pertinent part:

> [a] complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

---

[27] In enacting the ADA, Congress provided that the remedies and procedures for ADA claims are those that have been provided under Title VII. <u>Armstrong</u>, 141 F.3d at 560.

42 U.S.C. § 1981a(b)(1) (emphasis added).

As discussed above, Plaintiff can only maintain his remaining federal claims under Title VII and the ADA against his employer, the City. However, Plaintiff is precluded from recovering punitive damages from the City under Section 1981a(b)(1), because governments, government agencies, and political subdivisions are expressly exempted. 42 U.S.C. § 1981a(b)(2); Oden v. Oktibbeha Cty., 246 F.3d 458, 465-66 (5th Cir. 2001) (award of punitive damages against political subdivision under Title VII precluded due to 42 U.S.C. § 1981a(b)(1)); Liner v. Hosp. Serv. Dist. No. 1 of Jefferson Parish, 230 F. App'x 361, 365 (5th Cir. Apr. 10, 2007) (award of punitive damages against a political subdivision under the ADA precluded due to 42 U.S.C. § 1981a(b)(1)). In Oden, the Fifth Circuit concluded that a district court committed plain error by assessing punitive damages in a Title VII official capacity suit against a county Sheriff. 246 F.3d at 466. The Court observed that "[s]ubjecting the Sheriff to an $80,000 punitive damage award is inapposite to Congress's intent to preclude local government entities from paying such judgments." Id. In this case, the Court finds that it would similarly undermine congressional intent to assess punitive damages against the City

58

under Title VII or the ADA. Consequently, the Court will dismiss Plaintiff's claim for punitive damages.

### B. Plaintiff's Claims Under Louisiana Law

In addition to his claims under Section 1981, Title VII, and the ADA, Plaintiff makes_claims against the City Defendants under Louisiana law. (Compl., Rec. Doc. 1) The City_Defendants' motion did not address Plaintiff's state law claims. Thus, to the extent that Plaintiff has stated any viable claims under Louisiana law, those claims remain pending.

### C. The City Defendants' Request that the Court Stay Plaintiff's Claims Against the City of Slidell, Pursuant to 42 U.S.C. § 2000e-5(f)(1), Until Plaintiff Obtains a Right to Sue Letter from the Department of Justice

Although it is undisputed that Plaintiff filed a Charge of Discrimination with the EEOC and that the EEOC sent Plaintiff a right to sue letter on April 27, 2012,[28] City Defendants argue that Plaintiff's claims against the City, a municipality, must be stayed while Plaintiff obtains a right to sue letter from the Attorney General and that there is no evidence that the EEOC referred Plaintiff's Charge of Discrimination to the Department of Justice as required by 42 U.S.C. § 2000e-5(f)(1). In making this argument, City Defendants rely on the plain language of §

---

[28] Plaintiff attached the Notice of Right to Sue that he received from the EEOC to his Complaint. (Rec. Doc. 1, p. 4).

2000e-5(f)(1) and <u>Sawyer v. JRL Enterprises, Inc.</u>, No. 05-1685,

2005 WL 3543738 (E.D. La. Oct. 5, 2005). The Court finds that the

City Defendants' argument is meritless.

The lengthy subsection that City Defendants cite and rely

on, 42 U.S.C. § 2000e-5(f)(1), provides in pertinent part:

> *If within thirty days after a charge is filed* with the
> Commission or within thirty days afer expiration of any
> period of reference under subsection (c) or (d) of this
> section, *the Commission has been unable to secure from
> the respondent a conciliation agreement acceptable to
> the Commission*, the Commission may bring a civil action
> against any respondent not a government, governmental
> agency, or political subdivision named in the charge.
> *In the case of a respondent which is a government,
> governmental agency, or political subdivision, if the
> Commission has been unable to secure from the
> respondent a conciliation agreement acceptable to the
> Commission, the Commission shall take no further action
> and shall refer the_case to the Attorney General who
> may bring a civil action* against such respondent in the
> appropriate United States district court.

42 U.S.C. § 2000e-5(f)(1) (emphasis added).

The City Defendants read § 2000e-5(f)(1) in isolation,

without reference to other pertinent subsections of the statute,

in particular, a subsequent portion of § 2000e-5(f)(1), and §

2000e-5(b). The portion of § 2000e-5(f)(1) that is immediately

subsequent to the portion quoted above states:

> *If a charge filed with the Commission pursuant to
> subsection (b) of this section is dismissed by the
> Commission, or if* within one hundred and eighty days
> from the filing of such charge or the expiration of any
> period of reference under subsection (c) or (d) of this
> section, whichever is later . . . the Attorney general
> has not filed a civil action in a case involving a

government, governmental agency, or political
subdivision, or the Commission has not entered into a
conciliation agreement to which the person aggrieved is
a party, *the Commission, or the Attorney General in a
case involving a government, governmental agency, or
political subdivision, shall so notify the person
aggrieved and within ninety days after the giving of
such notice a civil action may be brought against the
respondent named in the charge (A) by the person
claiming to be aggrieved*...

§ 2000e-5(b) states in pertinent part:

Whenever a charge is filed by or on behalf of a person
claiming to be aggrieved . . . alleging that an
employer . . . has engaged in an unlawful employment
practice, the Commission shall serve a notice of the
charge (including the date, place and circumstances of
the alleged unlawful employment practice) on such
employer, within ten days and shall make an
investigation thereof . . . *If the Commission
determines after such investigation that there is
reasonable cause to believe that the charge is true,
the Commission shall endeavor to eliminate any such
alleged unlawful employment practice by informal
methods of conference, conciliation, and persuasion*...

42 U.S.C. § 2000e-5(b) (emphasis added).

When § 2000e-5(b) and § 2000e-5(f)(1) are read with
reference to one another, it is apparent that the isolated
provision in § 2000e-5(f)(1) that City Defendants' rely on
presupposes that the Commission's initial investigation of the
Charge of Discrimination at issue yielded reasonable cause to
believe that the Charge of Discrimination is true, thereby
obligating the Commission to endeavor to eliminate such alleged
unlawful employment practice by informal methods of conciliation.
As the Court understands it, § 2000e-5(f)(1) merely clarifies

61

that *if* the Commission engaged in informal methods of conciliation with a municipal entity, such as the City, and was unsuccessful in its efforts to secure an acceptable conciliation agreement, the agency with the discretionary authority to initiate suit against the municipal entity is the Attorney General, not the Commission.

In this case, the right to sue letter that the Commission issued after investigating Plaintiff's Charge of Discrimination merely indicated that "based upon its investigation, the [Commission] is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that respondent is in compliance with the statutes. . ." (Right to Sue Letter, Rec. Doc. 1, p. 4) The Court reads this statement as an indication that following its investigation of Plaintiff's Charge of Discrimination, the EEOC never determined that there was reasonable cause to believe that the Charge of Discrimination was true. Thus, the EEOC was never obligated to attempt to eliminate any allegedly unlawful practice by informal conciliation, and there is no indication that the EEOC attempted to obtain a conciliation agreement in the first place, much less that the EEOC was unsuccessful in its efforts to obtain one, which the statutory language in § 2000-5(f)(1) and common sense indicate are prerequisites to a referral of the matter to the

Attorney General for possible litigation. Thus, the Court finds that the portion of § 2000e-5(f)(1) that the City Defendants rely on does not apply in these circumstances.

Although the statute literally provides that in cases involving political subdivisions, the *Attorney General* shall notify the person aggrieved after their Charge of Discrimination is dismissed, the Court does not interpret § 2000e-5 as imposing a requirement that Plaintiff obtain a right to sue letter from the Attorney General rather than the EEOC under these circumstances. Considering that it is apparent when § 2000e-5 is read in its entirety, that the EEOC only refers matters to the Attorney General when the EEOC's initial investigation yields reasonable cause that the Charge of Discrimination is true, there was no reason for the EEOC to refer the matter to the Attorney General following its investigation in this case. The EEOC dismissed Plaintiff's Charge of Discrimination noting that it was "unable to conclude that the information it obtained during its investigation established a violation of the statutes." Thus, the Court finds that the EEOC's issuance of Plaintiff's right to sue letter is not a procedural defect that needs to be cured.

The City Defendants rely solely on their reading of the statute and have not offered any case law in support of their argument. The sole authority that City Defendants rely on,

63

<u>Sawyer</u>, offers no support for their contention that Plaintiff must obtain a Right to sue letter from the Attorney General rather than the EEOC before he may proceed with any remaining claims against the City.  In <u>Sawyer</u>, the Plaintiff failed to obtain any right to sue letter at all, whether from the EEOC or the Attorney General, prior to filing suit. 2005 WL 3543738, at * 2. While the case was pending, the <u>Sawyer</u> plaintiff obtained a Right to sue letter from the EEOC and filed it with the court. <u>Id.</u> The defendant moved to dismiss the <u>Sawyer</u> plaintiff's Title VII claims for failure to exhaust administrative remedies. <u>Id.</u> However, the court denied the defendant's motion finding that the subsequent filing of the Charge of Discrimination and Right to sue letter cured the initial defect.  <u>Id.</u> Thus, <u>Sawyer</u> offers no support for the City Defendants' argument that because the City is a political entity, Plaintiff must obtain a Right to sue letter from the Attorney General rather than the EEOC before he may proceed with any of his remaining claims against the City.

     Furthermore, in <u>Givs v. City of Eunice</u>, 512 F. Supp. 2d 522 (W.D. La. 2007), one of the cases that the City Defendants rely on to support their punitive damages argument, a former City employee, like Plaintiff, filed suit against the City of Eunice under Title VII and Section 1981 after receiving a right to sue letter from the EEOC. <u>Id.</u> at 533. The court did not recognize any

procedural defect based on the fact that the right to sue letter originated with the EEOC rather than the Attorney General. See id. Thus, for purposes of Plaintiff's ADA and Title VII claims against the City, the Court finds it inconsequential that Plaintiff initiated suit after receiving a Right to sue letter from the EEOC rather than the Attorney General. Moreover, the City Defendants' argument ignores the fact that Plaintiff has also asserted claims against the City under Louisiana law, at least some of which may not be governed by the administrative procedures applicable to claims under Title VII and the ADA. Thus, the Court concludes that a stay of Plaintiff's remaining claims against the City and the Employee Defendants is not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that the City Defendants' 12(b)(6) Motion to Dismiss **(Rec.Doc. 10)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that only Plaintiff's claims against the Employee Defendants under Title VII and the ADA are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that only Plaintiff's racial discrimination claims against the City under Section 1981 and Title VII are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's claim against the City for disclosure of confidential medical information pursuant to Section 12112(d) of the ADA is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's punitive damages claim against the City is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the City's request for a stay of the Plaintiff's remaining claims, pursuant to 42 U.S.C. § 2000e-5(f)(1), is **DENIED.**

New Orleans, Louisiana, this 27th day of March, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE