UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY REGINALD FRANKLIN                    CIVIL ACTION

VERSUS                                    NO: 12-1940

CITY OF SLIDELL, ET AL.                   SECTION: "J"(1)

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment **(Rec. Doc. 43)**, filed by Defendants, the City of Slidell and six of its employees. Plaintiff has filed an opposition (Rec. Doc. 44). The Defendants' motion was set for hearing, on the briefs, on June 19, 2013. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the Defendants' motion should be **GRANTED IN PART** for reasons explained more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On July 26, 2012, Plaintiff, Troy Franklin, filed the instant *pro se* employment discrimination lawsuit. (Compl., Rec. Doc. 1) Plaintiff is an African-American male who was formerly

1

employed by the City of Slidell as a senior corrections officer in the Slidell Police Department. (Compl., Rec. Doc. 1, p. 1; Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 1) As a senior corrections officer, Plaintiff's job duties included: responsibility for maintaining and controlling the Slidell City jail, supervising all personnel in Slidell's Corrections Division, ensuring proper functioning and usage of the Division's equipment by all personnel, and controlling and searching prisoners.[1] (Slidell Police Dep't Job Description, Ex. A to Def.'s Mtn for Summ. J., Rec. Doc. 43-4) Plaintiff also had arrest powers and authority to carry a firearm in the course a scope of his employment. Id.; (Klein Aff., Rec. Doc. 43-17, p. 2, ¶ 7) Physical requirements of senior corrections officers

---

[1] These facts are drawn from the statement of uncontested material facts submitted by Defendants with their motion for summary judgment. The Local Rules of the United States District Court for the Eastern District of Louisiana provide in pertinent part:

> Any opposition to a  motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement.

L.R. 56.2.

Pro se litigants must comply with "relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981); Leroy v. Blackwater, Inc., No. 06-4601, 2007 WL 2127593, at *3 (E.D. La. June 25, 2007). Pro se litigants have a duty to familiarize themselves with the local rules. L.R. 83.2.7. Because Plaintiff failed to submit a "separate and concise" statement of material facts which he contends present a genuine issue in response to Defendants' motion for summary judgment, all material facts in Defendants' statement of uncontested material facts have been deemed admitted for purposes of the instant motion.

included being able to restrain a violent suspect. Id. The job description also notes that senior corrections officers must have the ability to "determine the appropriate method of action to take should a riotous or volatile situation occur in the jail," and "on occasion may be in highly dangerous situations. Id.

On December 10, 2008, at Franklin's request, the City referred him to the Employee Assistance Program for counseling. Id. On April 20, 2009, Plaintiff filed a Charge of Discrimination with the EEOC alleging that he faced racial discrimination and retaliation for opposing practices made illegal under Title VII. On June 15, 2009, at Plaintiff's request, Plaintiff began twelve weeks of paid medical leave under the Family and Medical Leave Act ("FMLA") after providing the City with a note from his physician, Dr. Jose Lefran, diagnosing post traumatic stress syndrome. Id. On August 21, 2009, while still on paid medical leave, Plaintiff appeared at the U.S. Attorney's Office at the Federal Courthouse in New Orleans and refused to leave. Id. According to the U.S. Marshal's report of the incident, Plaintiff "wished to report to the USA office issues with his ranking officer/supervisor at the Slidell Police Department making threats against the lives of he and his family . . ." Id. Ultimately, the New Orleans Police Department ("NOPD") was contacted and officers escorted Plaintiff to University

3

Hospital for psychiatric evaluation. Id. The NOPD report states that the Court Operations Supervisor feared for Plaintiff's safety as well as the safety of members of the Slidell Police Department. Id. The U.S. Marshal's report of the incident states that "[Plaintiff] appeared to be emotionally disturbed and was extremely upset." Id. The U.S. Marshal's Office and the NOPD notified the Slidell Police Department of the incident. Id. On September 4, 2009, Plaintiff's FMLA leave ended. Id. On September 21, 2009, Plaintiff's treating psychiatrist, Dr. Larry Warner, advised that Plaintiff was still under his care and receiving treatment for Adjustment Disorder, mixed type, with depression and anxiety along with acute stress disorder. Id. Dr. Warner recommended that Plaintiff remain away from work while undergoing treatment for an undetermined time. Id. The City granted Plaintiff's request for paid catastrophic leave, which began the same day. Id. Plaintiff remained on catastrophic leave for one year, during which time he continued to collect his full salary, benefits, and accrue vacation and sick time. Id.

In July 2010, after being on leave for more than a year, Plaintiff sought to return to regular duty. However, before allowing Plaintiff to return to active duty as a senior corrections officer, the Slidell Chief of Police, Randy Smith, requested that Plaintiff undergo a fitness for duty physical and psychological evaluation. Id. Section 52.1.7(D) of the Slidell

4

Police Department Manual provides:

> [T]he Chief of Police, at his discretion, may require any member of the Slidell Police Department to submit to a psychological examination, administered by a licensed psychologist/psychiatrist of his/her (Chief) choosing. Reasons for evaluation may include, but are not limited to: fitness for duty, public safety liability and the general welfare of the involved member and the Department.

Id.

On August 12, 2010, Plaintiff was evaluated by psychologist, Dr. Alan James Klein. Id. In a report dated August 20, 2010, Dr. Klein opined that Plaintiff was not fit for duty in a law enforcement agency in any capacity, including as a corrections officer or performing administrative duties. Id. Based on an interview and testing, he reported that Plaintiff had a serious psychiatric disorder, quite possibly of psychotic proportions, with evidence of paranoid thought processing that is likely alcohol induced. Id. On September 2, 2010, the Slidell Police Department relieved Plaintiff of duty. Id. Slidell Civil Service Rule 16.01 provides that an employee may be discharged or suspended without pay by the appointing authority  or demoted or deprived of other privileges for, *inter alia*, physical or emotional unfitness for the position which the employee holds. Id. On September 20, 2010, Plaintiff's year-long catastrophic leave ended. Id. During that year of catastrophic leave and the prior twelve weeks of FMLA leave, Plaintiff had continued to

collect his full salary, benefits, and also continued to accrue vacation and sick time. Id. Once his catastrophic leave time ended, Plaintiff's status was changed to sick leave. Id. He continued to receive full pay as he used accrued sick time, vacation time and birthday time, and his accrued time was sufficient to cover roughly twenty-seven pay periods. Id. Several weeks after he was relieved of duty, Plaintiff applied to the Municipal Police Employees' Retirement System of Louisiana ("Retirement System") for disability retirement. Id. The retirement System referred him to a psychiatrist, Dr. Lawrence Wade, for an evaluation. Id. In a report dated November 5, 2010, Dr. Wade concluded that Plaintiff was not disabled but did not state that he was fit to return to duty as a senior corrections officer. Id. On December 3, 2010, while still on paid sick leave and while his first lawsuit against the City was still pending, Plaintiff submitted a second Charge of Discrimination to the Louisiana Commission on Human Rights and EEOC in which he alleged:

> I was released for return to work on July 15, 2010. Chief Randy Smith informed me I had to take a physical. Around August 13, 2010, I was told I couldn't go back to work because I failed part of the physical.

> I believe I'm being discriminated against because of my race, black, disability and in retaliation for filing a previous charge of discrimination with EEOC.

> Although I was released for work by my doctor, Chief

6

> Smith informed me I couldn't return to work because I was psychotic, delusional and paranoid. Base [sic] on information provided by Dr. Alan James Klein, Ph.D. it [sic] also stated that I was not fit to work for any law enforcement agency.

Id.

The EEOC issued a notice of right to sue on April 2, 2012, stating that it was unable to conclude that the information obtained establishes violations of the statutes. Id. Because the report that the Retirement Board obtained from Dr. Wade on November 5, 2010 did not find Plaintiff disabled, but also did not opine on his fitness for duty, the City paid for a second psychological fitness for duty exam for Plaintiff with Dr. Cary Rostow on May 17, 2011. Id. Dr. Rostow found Franklin fit for duty on May 20, 2011, and Plaintiff was returned to active duty. Id. Throughout this history, Plaintiff remained employed with the City, and received a step/grade pay increase in January 2012. Id.

On July 26, 2012, Plaintiff filed the instant suit against the City of Slidell ("the City"), Dr. Klein,[2] and six City employees, including: (1) Chief Randy Smith ("Chief Smith"), of the Slidell Police Department, (2) Captain Kevin Foltz ("Captain Foltz"), of the Slidell Police Department, (3) Captain Robert Jacobs ("Captain Jacobs"), of the Slidell Police Department, (4)

---

[2] On March 6, 2013, the Court issued an order and reasons granting Dr. Klein's motion to dismiss and dismissing all of Plaintiff's claims against Dr. Klein. (Order and Reasons, Rec. Doc. 38)

7

Lieutenant Rockwell McLellan ("Lieutenant McLellan"), of the Slidell Police Department, (5) D. Rene Johnson ("Johnson"), the Slidell Civil Service Personnel Director, and (6) Tim Mathison ("Mathison"), the City's Chief Administrative Officer (collectively "Employee Defendants"). (Compl., Rec. Doc. 1)

On March 27, 2013, the Court issued an Order and Reasons granting the City Defendants' 12(b)(6) motion in part and dismissing: (1) Plaintiff's Title VII and ADA claims against all Employee Defendants, (2) Plaintiff's racial discrimination claims under Title VII and Section 1981, (3) Plaintiff's claims for disclosure of confidential medical information under Section 12112(d) of the ADA, and (4) Plaintiff's punitive damages claim. (Order and Reasons, Rec. Doc. 39) Finding that Plaintiff had pleaded his best case with respect to those claims, the Court did not grant him leave to amend his complaint. (Order and Reasons, Rec. Doc. 39) Plaintiff's remaining claims in this action are: (1) his Title VII retaliation claim against the City, (2) his ADA claims against the City, and (3) his state law claims against all City Defendants. (Order and Reasons, Rec. Doc. 39) Specifically, Plaintiff claims that his employer, the City, violated the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101-12213 et seq., and the ADA regulations by: (a) requiring him to take a medical and psychological fitness for duty

8

evaluation before returning to work from medical leave, and (b) not allowing him to return to work after he failed the fitness for duty evaluation, thereby forcing him to use his personal vacation and sick time.[3] (Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 2) Second, Plaintiff claims that his employer, the City of Slidell, required him to take a fitness for duty evaluation and relieved him of his duties with the Slidell Police Department to retaliate against him for filing a discrimination complaint and civil lawsuit, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. (Compl., Rec. Doc. 1, p. 1) Third, Plaintiff has asserts various vague claims against all City Defendants under Louisiana law. Plaintiff seeks to recover: (1) back pay with benefits, front pay with benefits, or retirement if front pay is not a viable option, (2) general damages for loss of reputation, inconvenience, and the abuse he allegedly received, (3) costs, and (4) all other equitable relief

---

[3] This summary of Plaintiff's claim includes the allegations that he made in his original Complaint (Compl., Rec. Doc. 1), and his opposition to the City Defendants' Motion to Dismiss (Pl.'s Opp. to City Def.'s Mot. to Dismiss, Rec. Doc. 12). Because Plaintiff is proceeding pro se, in its Order and Reasons ruling on the Defendants' Motion to Dismiss, the Court construed Plaintiff's opposition and supplemental opposition (Rec. Doc. 37) to the Defendants' Motion to Dismiss , in part, as a motion to amend his Complaint, which the Court granted. (Order and Reasons, Rec. Doc. 39, p. 2, n. 1)

the Court deems proper.[4] (Compl., Rec. Doc. 1, p. 3) On May 13, 2013, the Defendants filed the instant Motion for Summary Judgment seeking to dismiss all of Plaintiff's remaining claims against them and set the motion for hearing on June 19, 2013. Plaintiff filed his opposition to the City Defendants' motion on June 11, 2013.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56©); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.  Little, 37 F.3d at

---

[4] Although Plaintiff originally sought punitive damages (Rec. Doc. 1), the Court dismissed that claim in its Order and Reasons ruling on the Defendants' Motion to Dismiss. (Rec. Doc. 39)

1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See,

11

e.g., id. at 325; Little, 37 F.3d at 1075.

### DISCUSSION

### A. Plaintiff's Title VII Retaliation Claim Against the City

Plaintiff alleges that the City required him to take a fitness for duty examination and ultimately relieved him of his duties with the Slidell Police Department, because he filed an EEOC charge. 42 U.S.C. § 2003-3(a) establishes a claim for retaliation against an employee who files a charge of discrimination with the EEOC and provides in pertinent part:

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings: It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The Fifth Circuit has explained:

> Retaliation claims under Title VII are governed by the familiar three-step McDonnell Douglas test. Under this test, an employee bringing a retaliation claim must first produce evidence of a prima facie case of retaliation. to establish a prima facie case of retaliation, an employee must demonstrate that (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the

12

employee to demonstrate that the employer's reason is actually a pretext for retaliation.

LeMaire v. Louisiana Dep't of Transp. and Dev., 480 F.3d 383, 388-89 (5th Cir. 2007) (internal citations omitted).

Although Defendants dispute whether Plaintiff can satisfy the first two elements of a prima facie case of retaliation, it is unnecessary to address those arguments. Even assuming that Plaintiff could produce evidence of a prima facie case of retaliation, the City Defendants have stated legitimate, non-retaliatory reasons for their decision to require Plaintiff to submit to medical and psychological fitness for duty examinations and relieve Plaintiff of his duties with the Slidell Police Department. Fuentes v. Postmaster General of the United States Postal Service, 282 F. App'x 296, 303 (5th Cir. 2008) (per curiam) (declining to decide whether the plaintiff satisfied the causation element of her prima facie case, because it found that the plaintiff could not prove that the legitimate, nondiscriminatory reasons her employer offered were a pretext for retaliation). In Fuentes, a similar case, the plaintiff alleged that her employer retaliated against her for filing an EEOC charge by not allowing her to return to work immediately after receiving medical clearance. Id. at 303. The employer explained that the plaintiff remained off work for several months after she received full medical clearance to return because, pursuant to

13

company regulations, she  was required to undergo fitness for duty examinations to determine if she was mentally healthy enough to return to her position as a manager after nine months off work due to stress and anxiety. Id. Because the plaintiff in Fuentes failed to point to any evidence that her employer's justifications were merely pretext for retaliation, the court concluded that a grant of summary judgment in favor of the employer on the retaliation claim was appropriate. Id. at 304.

In this case, like in Fuentes, Plaintiff was ultimately permitted to return to his original position after passing a fitness for duty examination. The City's justifications for requiring Plaintiff to submit to medical and psychological fitness for duty examinations prior to returning to work from sick leave are also similar to, and in fact more compelling than those offered in Fuentes considering that Plaintiff sought to return to a position as an armed senior corrections officer with responsibility for, among other things, controlling prison inmates, not a position as a post office manager. The City contends that it required Plaintiff to take the fitness for duty examinations prior to returning to active duty, because: (a) Plaintiff had been granted more than a year of paid medical leave based on his physicians' diagnoses of post traumatic stress syndrome, adjustment disorder, depression, anxiety, and acute

14

stress disorder, and statements that he was unable to work in his position as a senior corrections officer, (b) Plaintiff engaged in erratic behavior before and during his period of medical leave, including the incident at the United States' Attorneys' Office on August 21, 2009, and © it was necessary and appropriate to require Plaintiff to pass a fitness for duty examination before resuming his duties as a senior corrections officer in light of the nature of that position and City policies. In light the City's proffered nondiscriminatory reasons for its actions, the burden shifts to Plaintiff to produce evidence that these proffered reasons are merely pretext for retaliation. Id.

Plaintiff has submitted a single page opposition and an affidavit, without any statement of material facts which he contends present a genuine issue. Because Plaintiff has failed to include a statement of the material facts that he contends present a genuine issue, all of the material facts in the City's statement have been deemed admitted for purposes of this motion under the local rules. See supra n. 1. In his opposition, Plaintiff states that Defendants' motion is repetitive of the 12(b)(6) motion to dismiss that the Court already ruled on, that his "only response" is that the "additional information being provided by the defense is false and misleading," that Chief Smith's affidavit is perjury, and that the case raises issues of

15

credibility that should be decided by a jury. (Rec. Doc. 44)
However, this response is insufficient. To satisfy his burden
under Rule 56, a nonmovant is "required to identify specific
evidence in the record, and to articulate the 'precise manner' in
which that evidence support[s] [his] claim." Forsyth v. Barr, 19
F.3d 1527, 1537 (5th Cir. 1994). Because Plaintiff, like the
plaintiff in Fuentes, has failed in his opposition to articulate
the precise manner in which his affidavit supports his
retaliation claim, and creates a genuine issue of material fact
with respect to whether the City's nondiscriminatory
justifications are pretextual, his Title VII retaliation claim
will be dismissed.

### B. Plaintiff's ADA Claims Against the City

#### 1. Disability Discrimination

Plaintiff claims that his employer, the City, violated the
Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§
12101-12213 et seq., and the ADA regulations by not allowing him
to return to work after he failed a fitness for duty evaluation,
thereby forcing him to use his personal vacation and sick time.
Plaintiff also claims that the City denied him a reasonable
accommodation by not allowing him to return to work on
"administrative duties," after he received medical clearance to
return to work on administrative duties. (Pl.'s Opp. to City

16

Def.'s Mot. to Dismiss, Rec. Doc. 12, p. 2) To establish a prima facie case of discrimination under the ADA, plaintiff must establish that: (1) he has a disability; (2) he was qualified for the job in question; and (3) he suffered an adverse employment decision because of his disability. Gonzales v. City of New Braunfels, Tex., 176 F.3d 834, 836 (5th Cir. 1999); Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999). Defendants argue, *inter alia*, that Plaintiff cannot make a prima facie ADA claim, because he cannot show that he was qualified for the job in question — senior corrections officer. The Court agrees. Alternatively, the Court finds that even if Plaintiff could show that he were disabled and qualified for the position of senior corrections officer, his requested accommodation — alteration of his job responsibilities as a senior corrections officer to perform only administrative duties — was not reasonable and, thus, not required under the ADA.

A disabled individual is qualified for the job in question if, *inter alia*, he can perform the essential functions of the job with or without reasonable accommodation. Gonzales, 176 F.3d at 837 (citations omitted). "To avoid summary judgment on whether he is a qualified individual, [Plaintiff] needs to show 1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his

disability would have enabled him to perform the essential functions of the job." Turco v. Hoechst Celanese Chem. Grp., Inc., 101 F.3d 1090, 1093 (5th Cir. 1996) (alterations added). "'Essential functions" are those duties that are fundamental to the job at issue; the term does not include the marginal functions of the position. Kapche v. City of San Antonio, 176 F.3d 840, 843 (5th Cir. 1999); 29 C.F.R. § 1630.2(n)(1). The EEOC implementing regulations provide that "[a] job function may be considered essential if, for example, "the reason the position exists is to perform that function." Id. § 1630.2(n)(2)(I). "To aid in the determination of whether a function is essential, a court may consider evidence a variety of factors including, but not limited to, (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, and (4) the work experience of both past and current employees in the job." Kapche, 176 F.3d at 843.

Here, the only evidence with respect to the "essential functions" of a senior corrections officer is the written job description provided by Defendants.[5] The job description for a

_____

[5] Although the City has provided a list of the duties of a senior corrections officer, it has not identified those duties it considers essential. Moreover, although it appears that the City prepared the written job description after Plaintiff was hired, the Court finds that it is properly

18

senior corrections officer, as a whole, demonstrates that the senior corrections officer position exists, at least, to fulfill the functions of maintaining and controlling the Slidell City jail, controlling and searching prisoners, and determining the appropriate course of action in the event of riotous or volatile situations in the jail. Thus, these are essential functions. There is no genuine dispute as to whether Plaintiff was qualified to perform the essential functions of a senior corrections officer. Plaintiff was employed by the City as a senior corrections officer. Plaintiff went on paid medical leave on June 15, 2009, at his own request, after submitting a physician's note indicating that he suffered from "post traumatic stress syndrome." Plaintiff did not attempt to return to his position until July of 2010. However, the City required him to take a fitness for duty examination upon return from medical leave pursuant to City policy and in August of 2010, Dr. Klien, a psychologist, rendered his opinion that Plaintiff was not fit for duty in any capacity in a law enforcement agency, whether as a corrections officer or in performing administrative duties. Plaintiff has submitted an affidavit in opposition to Defendants' motion in which he states:

---

considered as evidence of the essential functions of a senior corrections officer, because Plaintiff participated in creating it and the EEOC implementing regulations do not strictly limit the types of evidence the Court may consider.

> I received on June 24, 2010 a return to work
> certification from my doctor and Chief Freddy
> Drennan signed for me to return to work on July
> 15, 2010 on administrative duties giving me
> accommodations consistent with the American with
> disabilities Standards [sic].

(Rec. Doc. 44-1, p. 1, ¶ 9)

Although Plaintiff's affidavit vaguely alludes to another
doctor certifying him to return to work in June of 2010, before
his fitness for duty examination with Dr. Klein in August of
2010, the affidavit is insufficient to create a genuine issue
with respect to whether he was qualified to perform these
essential functions of a senior corrections officer. The "return
to work certification" shows that Plaintiff's doctor, Dr.
Pinkney, only authorized Plaintiff to return to work on"
administrative duties," and Plaintiff's own affidavit indicates
that he only sought to return to work on "administrative duties."
Given that administrators typically perform desk jobs, the return
to work certification does not show that Plaintiff was qualified
to control the jail, maintain the jail and jail equipment,
control and search prisoners, and respond to riotous or volatile
situations in the jail — essential functions of a senior
corrections officer.

Moreover, Plaintiff's claim that the City denied him a
reasonable accommodation, because it would not permit him to
return to work on "administrative duties" fails. The ADA defines

a "reasonable accommodation" as follows:

> The term 'reasonable accommodation' may include –
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 809 (5th Cir. 1997) (quoting 42 U.S.C. § 12111).

> The Fifth Circuit has observed that:
>
> 'While the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled.'

Id. at 808.

Furthermore, "[the ADA] does not require affirmative action in favor of individuals with disabilities. It merely prohibits employment discrimination against qualified individuals with disabilities, no more and no less." Turco, 101 F.3d at 1094 (citing Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995)). Thus, employers are not required to find or create jobs for disabled employees. Foreman, 117 F.3d at 809 ("An employer is

21

not required to create 'light duty' jobs to accommodate.")
(citing <u>Turco</u>, 101 F.3d at 1094); <u>Wann v. American Airlines,</u>
<u>Inc.</u>, 878 F. Supp. 82, 85 (1994) (employer "is not required to
eliminate one or more of the essential functions of a job to
accommodate an applicant.") (citations omitted) In <u>Foreman</u>, the
Fifth Circuit concluded that it was not a reasonable
accommodation to require a manufacturer defendant to eliminate an
essential function of the job of expeditor[6] and, in effect,
create a new job for the plaintiff. 117 F.3d at 809. Similarly,
here, the Court finds that it is not reasonable to require the
City to eliminate essential functions of the job of senior
corrections officer to remove all duties except "administrative
duties," and in effect, create a new "light duty" job to
accommodate Plaintiff. Thus, Plaintiff's discrimination and
failure to accommodate claims under the ADA will be dismissed.

**2. Medical and Psychological Fitness for Duty**
        **Examinations**

The Court finds that the Defendants' motion should be
granted as to Plaintiff's ADA claim under Section 12112(d)(4).
Section 12112(d)(4)(A) of the ADA provides that "[a] covered
entity shall not require a medical examination and shall not make

---

[6] The essential function was making deliveries into shop areas. <u>Foreman</u>,
117 F.3d at 808.

inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). "Relatively few courts have addressed either [Section 12112(d)(4)(A)] or the related subsections involving preemployment inquiries and employment entrance examinations." Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 94 (2d Cir. 2003). The employer bears the burden of demonstrating business necessity. Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th Cir. 2011) (citing Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); Conroy, 333 F.3d at 97). Although it appears that the Fifth Circuit has never construed Section 12112(d)(4)(A), the Second Circuit has observed:

> The case law on inquiries directed toward individual employees thus demonstrates that courts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine 1) whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employees's capacity to perform his or her duties (such as frequent absences or a known disability that had previously affected the employee's work) . . .

Id. at 98; Brownfield, 612 F.3d at 1146 (business exception applies before employee's work performance declines if the employer is faced with "significant evidence that could cause a reasonable person to inquire as to whether an employee is still

capable of performing his job.") (internal citations omitted); Watson v. City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999) (business necessity exception applicable "[i]n any case where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional"); Yin v. State of California, 95 F.3d 864, 868 (9th Cir. 1996) (business necessity exception applicable at summary judgment where employer showed, based on employee's excessive absenteeism and declined productivity, that "health problems have had a substantial and injurious impact on an employee's job performance.")

Based on Yin, Watson, and Brownfield, the Court finds that the City has presented sufficient evidence that a legitimate, non-discriminatory reason to doubt Plaintiff's capacity to perform his duties existed at the time that Chief Smith required the fitness for duty examination. Since the City bears the burden of showing business necessity, it must come forward with evidence that would entitle it to a directed verdict if it went uncontroverted at trial. Here, the City has satisfied that burden. The City has presented uncontroverted evidence that Plaintiff was a senior corrections officer with responsibility for managing a prison, supervising other corrections officers, searching prisoners, and responding to riotous situations at the jail. The City has also presented uncontroverted evidence that

Plaintiff requested medical leave based on physicians' various diagnoses of post-traumatic stress syndrome, adjustment disorder, depression, anxiety, and acute stress disorder, and remained on paid medical leave for over a year, between June 15, 2009 and July of 2010, before requesting to return to his position. In addition, it is undisputed that on August 21, 2009, during his extended medical leave, Plaintiff was involved in an incident at the United States Attorneys' Office that caused witnesses to fear for Plaintiff's safety and the safety of members of the Slidell Police Department. Given the reasons Plaintiff provided the City for requesting medical leave, the extensive duration of Plaintiff's medical leave, the August 21, 2009 incident, and the nature of Plaintiff's position as a senior corrections officer, the City had good cause to determine, through a fitness for duty examination, whether Plaintiff was able to perform his job before allowing him to return to work as a senior corrections officer. Yin, 95 F.3d at 868; Watson, 177 F.3d at 935; Brownfield, 612 F.3d at 1145-47. Plaintiff has failed to counter the City's evidence with sufficient evidence of his own or show that the City's evidence may not persuade a jury to return a verdict for the City. Thus, no rational juror could find that the City did not have good cause to require Plaintiff to take a psychological fitness for duty examination before returning to work.

It appears that the Fifth Circuit has never construed Section 12112(d)(4)(A) of the ADA in general or the scope of its business necessity exception in particular. However, in an unreported decision, <u>Crews v. Dow Chemical Co.</u>, 287 F. App'x 410 (5th Cir. 2008), the Fifth Circuit did consider whether an employer violated § 12112(a) when it restricted a resource leader's access to the work premises and e-mail and cancelled her transfer to a position in Europe pending the completion of a fitness for duty assessment. <u>Id.</u> at 410-11. The Fifth Circuit affirmed the grant of summary judgment in favor of the plaintiff's employer, reasoning that even if the plaintiff had met her *prima facie* case under the <u>McDonnell Douglas</u> burden-shifting framework, her employer had articulated a legitimate, non-discriminatory rationale for requiring the plaintiff to undergo the fitness for duty assessment, specifically, changes in her workplace behavior, including, among other things, hand tremors, slurred speech, decreased engagement at meetings, inability to make arguments concerning topics she was very knowledgeable about, and discussing improper topics during work-related meetings. <u>Id.</u> at 412. The Court concluded: (a) that plaintiff's employer reasonably could have found that such changes might impair the plaintiff's performance as a resource leader whose job responsibilities included determining which

26

employees should staff a project, reviewing employees, setting salary recommendations, and directing assignments, and (b) that based on the summary judgment record, the plaintiff had not established that the employer's rationale was pretextual. <u>Id.</u> Even if Plaintiff's claim regarding the fitness for duty examination were treated under 12112(a), instead of 12112(d)(4)(a), the Court finds that summary judgment is appropriate with respect to Plaintiff's ADA claim stemming from the fitness for duty examination, given that, like in <u>Crews</u>, the Court has already found that: (a) the City has articulated a legitimate, non-discriminatory reason for requiring plaintiff to undergo the fitness for duty assessment, and (b) Plaintiff has failed to create a genuine issue with respect to whether the proffered justifications are pretextual.

**C. Plaintiff's Claims Under Louisiana Law**

Plaintiff's state law claims are presently before the Court by virtue of its supplemental jurisdiction. However, under 28 U.S.C. § 1367©, a federal district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Given that all of Plaintiff's remaining federal claims will have been dismissed by the instant order, the Court declines to exercise supplemental

jurisdiction over Plaintiff's remaining state law claims. <u>Marshall v. Williams</u>, No. 01-1576, 2002 WL 1042070, at * 2 (E.D. La. May 22, 2002) (declining to exercise supplemental jurisdiction over remaining state law claims after dismissing all federal claims).

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment **(Rec.Doc. 43)** is **GRANTED** with respect to Plaintiff's Title VII and ADA claims.

**IT IS FURTHER ORDERED** that Plaintiff's Title VII retaliation claim and ADA claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, this 27th day of August, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE